In re Darlene KEEFE, Plaintiff,

v.

KIRSCHENBAUM & KIRSCHENBAUM, P.C., a New York professional corporation; and Kenneth Kirschenbaum, individually, Defendants.

No. 01SA203.

Supreme Court of Colorado,
En Banc.

Feb. 11, 2002.

Eric R. Jonsen, Broomfield, CO, Attorney for Plaintiff.

McConnell, Siderius, Fleischner, Houghtaling & Craigmile, LLC, Walter N. Houghtaling, Troy R. Rackham, Denver, CO, Attorneys for Defendants.

Justice COATS delivered the Opinion of the Court.

Kirschenbaum & Kirschenbaum, P.C., a New York professional corporation, and Kenneth Kirschenbaum, petitioned for relief pursuant to C.A.R. 21 from the denial of their motion to dismiss a legal malpractice action in the Arapahoe County District Court for lack of personal jurisdiction. Over an eleven year period, Kirschenbaum represented Darlene Keefe, a Colorado resident, in a lawsuit in New York and in settling the New York judgment against her. This court issued its rule to show cause. Because Keefe, the plaintiff in the Colorado malpractice suit, alleged the purposeful creation by Kirschenbaum of continuing obligations between them that were sufficient to satisfy due process requirements for the exercise of specific jurisdiction by this state, the rule is discharged.

## I.

This legal malpractice action arises out of the representation by Kenneth Kirschenbaum and his law firm of Darlene Keefe in a New York lawsuit. After settlement of the New York judgment against Keefe, she filed suit against Kirschenbaum in Colorado. Kirschenbaum responded to the allegations of Keefe's complaint by moving to dismiss for lack of personal jurisdiction. *See* C.R.C.P. 12(b)(2). The district court denied the motion, finding that Kirschenbaum engaged in business contacts with Colorado that resulted in sufficient consequences to Keefe to justify the exercise of long-arm jurisdiction.[1]

In her complaint Keefe alleged that she is a Colorado resident who retained Kirschenbaum in July 1988 to defend her in a lawsuit in New York in which National Union Fire Insurance Co. sought recovery of payments it had made as surety on a loan to her. The arrangements were made by Jerri Eckelberger, Keefe's Colorado attorney, who also requested that all communication between Kirschenbaum and Keefe be through her. After

Keefe wired Kirschenbaum $1,000 for legal fees, he answered National Union's complaint in the New York County Supreme Court.

Shortly thereafter, Keefe, through Eckelberger, authorized Kirschenbaum to settle the suit by paying the outstanding amounts claimed by National Union. Kirschenbaum allegedly failed to relay Keefe's settlement offer to National Union or pursue settlement negotiations and took no action either to defend or settle the lawsuit for a period of more than four years. During those years, Kirschenbaum and Eckelberger maintained only minimal contact.

When National Union's counsel next contacted Kirschenbaum in 1993, Kirschenbaum tried unsuccessfully to communicate directly with Keefe. After his letter was returned undelivered, apparently because Eckelberger had given him the wrong address, Kirschenbaum informed Eckelberger that he would take no further action until he heard from either Eckelberger or Keefe. Eckelberger apparently took no action, and Ms. Keefe was therefore never informed that the lawsuit had once again become active.

Upon further requests by National Union to resolve the action in 1996, Kirschenbaum demanded through Eckelberger additional retainer funds, which Keefe paid. Kirschenbaum then acquired and forwarded a letter to Eckelberger from National Union's counsel setting forth the amount National Union claimed to be due and owing from Keefe, including the interest that had accrued over the prior eight years of his representation of Keefe. In September 1996, after National Union filed a motion for summary judgment, Kirschenbaum also sent a letter directly to Keefe concerning the summary judgment motion but again sent the letter to the wrong address. Receiving no direction from either Keefe or Eckelberger, Kirschenbaum did not respond in any way to the summary judgment motion, and the New York court entered judgment in favor of National Union.

---

1. The Colorado Long Arm Statute, § 13–1–124(1), 5 C.R.S. (2001), states,

   Jurisdiction of courts. (1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person and, if a natural person, such person's personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:(a) The transaction of any business within this state ...

The judgment was subsequently domesticated in Colorado, and Keefe finally became aware of it in April 1998, when she received a Notice of Entry of Judgment from the Arapahoe District Court.

Upon receiving the notice of judgment in Colorado, Keefe requested that Kirschenbaum negotiate a settlement in New York. He agreed, provided that he receive payment for fees owed and anticipated. After Keefe wired Kirschenbaum an additional $3000, he negotiated the settlement with National Union's counsel in New York, obtaining approval from Keefe's husband for the final agreement.

After executing the stipulation of settlement, Keefe filed a malpractice action against Kirschenbaum and Eckelberger in the Arapahoe County District Court. Sometime before serving Kirschenbaum with the Complaint in this matter, Keefe settled her claims against Eckelberger. After the district court denied his motion to dismiss, Kirschenbaum petitioned this court for relief pursuant to C.A.R. 21.

## II.

■ Exercise of the supreme court's original jurisdiction is entirely within its discretion. *In re: People v. Lee,* 18 P.3d 192, 195 (Colo.2001). Relief pursuant to C.A.R. 21 is appropriate where a district court is proceeding without or in excess of its jurisdiction, *see White v. Dist. Court,* 695 P.2d 1133, 1135 (Colo.1984), and no other remedy would be adequate. *People v. Dist. Court,* 664 P.2d 247, 251 (Colo.1983). In part because a challenge to the personal jurisdiction of the court over someone not present in the state raises the question whether it is unfair to force such a party to defend here at all, we have on previous occasions entertained challenges at this stage of the proceedings to the exercise of personal jurisdiction by district courts over out-of-state defendants. *See, e.g., Scheuer v. Dist. Court,* 684 P.2d 249 (Colo.1984); *Fleet Leasing, Inc. v. Dist. Court,* 649 P.2d 1074 (Colo.1982); *Waterval v. Dist. Court,* 620 P.2d 5 (Colo.1980); *Dwyer v. District Court,* 188 Colo. 41, 532 P.2d 725, (1975); *Safari Outfitters v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (1969).

## A.

With its adoption of Colorado's long-arm statute, § 13–1–124(1), 5 C.R.S. (2001), the General Assembly made clear its intent "to extend the personal jurisdiction of Colorado's courts to their maximum limits permissible under the United States and Colorado Constitutions." *Scheuer,* 684 P.2d at 250; *Fleet Leasing, Inc.,* 649 P.2d at 1078; *Dwyer,* 188 Colo. at 44, 532 P.2d at 726; *Safari Outfitters,* 167 Colo. at 459, 448 P.2d at 784. With regard to the kinds of acts described by the statute, "[t]his interpretation obviates the need for statutory analysis separate from the due process inquiry required by *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny." *C.F.H. Enter., Inc. v. Heatcool,* 538 F.Supp. 774, 775 (D.Colo.1982); *McAvoy v. Dist. Court,* 757 P.2d 633, 634 n. 1 (Colo. 1988).

■ While states generally have a "manifest interest" in providing their residents with a convenient forum for redressing injuries inflicted by out-of-state actors and while physical presence is clearly not a prerequisite of personal jurisdiction, due process does require that individuals have a fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Fair warning, or forseeability, in this context, however, is not merely the foreseeability of causing injury in another state. *Id.* at 474, 105 S.Ct. 2174. The foreseeability that is critical to the due process analysis necessarily requires that the defendant's "conduct and connection" with the forum state be such that he should reasonably anticipate being haled into court there. *Id.; World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Unilateral activity by those who claim some relationship with a nonresident defendant cannot in itself satisfy the requirement of contact with the forum state. *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. 2174. The constitutional touchstone remains whether the defendant purposefully estab-

lished "minimum contacts" in the forum state. *Id.; Int'l Shoe Co,* 326 U.S. at 316, 66 S.Ct. 154; *Scheuer,* 684 P.2d at 251. It is essential that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Int'l Shoe Co.,* 326 U.S. at 319, 66 S.Ct. 154; *Scheuer,* 684 P.2d at 251.

■ For a nonresident to be subjected to the general jurisdiction of the forum state by his activities there, those activities must be continuous and systematic, of a general business nature, *see Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); but for specific jurisdiction to adjudicate claims arising from an out-of-state defendant's contacts with the forum state, the fair warning requirement is satisfied as long as the litigation results from alleged injuries that "arise out of or relate to" activities that are significant and purposefully directed by the defendant at residents of the forum. *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174. As long as the defendant has purposefully availed himself of the privilege of conducting activities within another state, both this court and the Supreme Court have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction. *Id.* at 476, 105 S.Ct. 2174; *Waterval,* 620 P.2d at 8. It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and telephone communications across state lines. *Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. 2174.

■ Even a single act can sometimes support specific jurisdiction. *Id.; McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 222–23, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Scheuer,* 684 P.2d at 251. The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random or fortuitous contacts or the unilateral activity of a third party. *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174; *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 417 n. 17, 104 S.Ct. 1868 (passive

activity of a mere customer within a state is insufficient to confer jurisdiction); *Keeton v. Hustler Magazine,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *World–Wide Volkswagen Corp.,* 444 U.S. at 299, 100 S.Ct. 559 (a finding that a product can be transported to and used in a state is too tenuous a connection). In addition, however, for jurisdiction to be proper, the contacts must proximately result from actions of the defendant that create a "substantial connection" with the forum state. *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174; *McGee,* 355 U.S. at 223, 78 S.Ct. 199. Although single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an "attenuated" affiliation with the forum, the Supreme Court has made clear that when a defendant has deliberately created "continuing obligations" between himself and residents of the forum, he has manifestly availed himself of the privilege of conducting business there. *Burger King Corp.,* 471 U.S. at 475–76, 105 S.Ct. 2174 (franchise agreement); *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 648, 70 S.Ct. 927, 94 L.Ed. 1154 (1950) (according great weight to the consequences of contractual obligations in the state); *see also Scheuer,* 684 P.2d at 252 (out-of-state attorneys' representation was continuous from commencement of employment to disputed distribution of funds); *Waterval,* 620 P.2d at 10 (acts of Virginia attorney, though intermittent rather than continuous in frequency, were sufficient in duration and significance).

■ Once it has been decided that a defendant purposefully established minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. 2174 (quotation from *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154.). Considerations like the burden on the defendant, the forum state's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief may sometimes serve to

establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Id.* at 477, 105 S.Ct. 2174. On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Id.*

■ The Supreme Court long ago rejected the notion that personal jurisdiction might turn on mechanical tests or conceptualistic theories of the place of contracting or performance. *Id.* at 478–79, 105 S.Ct. 2174; *see also Kulko v. Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (few answers written in black and white; "greys are dominant and even among them the shades are innumerable"). While not a matter of discretion, the resolution of jurisdictional issues of this type frequently involves an ad hoc analysis of the facts. *Waterval,* 620 P.2d at 10. Indeed, "divining personal jurisdiction" has been described as "more an art than a science." *Sawtelle v. Farrell,* 70 F.3d 1381, 1388 (1st Cir.1995); *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994); *Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 468 n. 7(1st Cir.1990).

### B.

■■ A party seeking a remedy under the Colorado long-arm statute is required to allege sufficient facts to support a reasonable inference that the nonresident defendant has engaged in conduct under the statute which subjects the nonresident to the personal jurisdiction of the court. *Shon v. Dist. Court,* 199 Colo. 90, 93, 605 P.2d 472, 474 (1980); *Pioneer Astro Industries v. Dist. Court,* 193 Colo. 409, 411, 566 P.2d 1067, 1068 (1977); *Texair Flyers v. Dist. Court,* 180 Colo. 432, 436, 506 P.2d 367, 369 (1973). A prima facie showing of threshold jurisdiction may be determined from allegations set forth in the complaint as well as from evidence introduced in any hearing conducted on the matter and is sufficient. *Scheuer,* 684 P.2d at 250; *Le Manufacture Francaise v. Dist. Court,* 620 P.2d 1040, 1042 (Colo.1980); *Waterval,* 620 P.2d at 9.

■ The litigation objected to by Kirschenbaum and his law firm in this case results from alleged injuries that "arise out of or relate to" their representation of Ms. Keefe in a lawsuit, which involved activities purposefully directed at someone they knew to be a resident of this state. Due process, therefore, requires only fair warning to the defendants that they could be subject to the specific jurisdiction of the Colorado courts relating to those activities. It is also clear that Kirschenbaum is alleged to have made a number of purposeful contacts with the state during the course of that representation, including communications and attempted communications with Eckelberger and Keefe by mail and telephone; negotiating the terms of representation; advising about the progress of the suit and the demands of National Union; requesting and receiving authorization for various actions; and demanding and receiving payment. That Kirschenbaum was initially contacted by Eckelberger on Keefe's behalf is immaterial since he deliberately accepted the responsibility of representing a Colorado client. *Scheuer,* 684 P.2d at 252.

Nor could Kirschenbaum's activities directed toward a resident of this state be characterized as "single or occasional acts" that were sufficient to create only an "attenuated" affiliation with the forum. Kirschenbaum did not agree to perform an isolated act for Keefe; he entered into an attorney-client relationship with her and agreed to represent her in a lawsuit, necessarily involving "continuing obligations" on both their parts. Over the course of some eleven years, Kirschenbaum not only received instructions and attempted to exchange information (however unsuccessfully at times) with and on behalf of Keefe but also demanded and accepted payment for services in connection with his representation at least three times, ultimately taking $3,000 to negotiate a settlement of the default judgment that National Union had begun enforcing against Keefe in the courts of this state.

Considering the totality of the circumstances, it is not at all apparent that assertion of personal jurisdiction in this case would be inequitable or in any way fail to

comport with "fair play and substantial justice." The defendants are attorneys, and the activity out of which the injury allegedly arose was an ongoing lawsuit with potential consequences for Keefe's assets in this state. Kirschenbaum agreed to represent a resident of Colorado in litigation, presumably because he considered it to his advantage to do so. He consciously entered into the agreement, with foreseeable consequences, without attempting to limit by agreement the jurisdiction in which his conduct of the litigation could be challenged. If either party in such a relationship could be expected to lack an understanding of jurisdictional distinctions, it was Keefe who would be more than inconvenienced by having to seek redress in a foreign jurisdiction for Kirschenbaum's allegedly unprofessional conduct resulting in a judgment and collection effort against her. It is Keefe who could be expected to be substantially disadvantaged by having to proceed against her Colorado and New York attorneys in separate jurisdictions.

The question of the legitimacy of exercising specific jurisdiction over a nonresident who is not present in the state and has not expressly agreed to jurisdiction largely involves an ad hoc analysis of the facts of each case. While some lower federal courts appear to take a more restrictive view of the constitutionally permissible range of long-arm jurisdiction, *see, e.g., Sawtelle*, 70 F.3d at 1388, the individual nature of the determination makes it extremely difficult to compare precisely the unique circumstances and outcomes of different cases. Furthermore, to the extent that an actual difference of interpretation may exist, the lower federal courts do not authoritatively interpret the United States Constitution for this court. *People v. Dunlap*, 975 P.2d 723, 748–49 (Colo.1999); *Community Hosp. v. Fail*, 969 P.2d 667, 678 (Colo.1998). But for the fact that the representation in this case involved litigation, with even more contacts and over a considerably longer period of time, and that it actually resulted in an enforcement attempt in the courts of this state, the jurisdictional facts of this case are not remarkably different from those of other cases in which this court has found sufficient minimum contacts to support personal jurisdiction over out-of-state attor-

neys representing in-state residents. *See, e.g., Scheuer*, 684 P.2d 249; *Waterval*, 620 P.2d 5. If anything, the subsequent jurisprudence of the Supreme Court has confirmed rather than brought into question the reliability of those outcomes. *See Burger King Corp.*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528.

### III.

Because Keefe alleged sufficient facts in her complaint to support a reasonable inference that the law firm of Kirschenbaum and Kirschenbaum, and Kenneth Kirschenbaum individually, engaged in conduct that by statute and constitution subjects them to the personal jurisdiction of the Colorado courts in this matter, the district court did not err in denying their motion to dismiss. The rule is therefore discharged.