In re the PARENTAL
RESPONSIBILITIES
OF H.Z.G., a Child,

Upon the Petition of S.M.G.,
Petitioner–Appellee,

and

Concerning D.C., Respondent–Appellant.

No. 02CA0227.

Colorado Court of Appeals,
Div. IV.

May 8, 2003.
Certiorari Denied Sept. 22, 2003.

Jeffrey H. Cahn, P.C., Jeffrey H. Cahn, Boulder, Colorado, for Petitioner–Appellee.

Warren & Carlson L.L.P., Bruce W. Warren, Niwot, Colorado, for Respondent–Appellant.

Opinion by Judge ROTHENBERG.

In this paternity action, D.C. (father) appeals from the judgment based on the trial court's determination that it acquired personal jurisdiction over him, a nonresident, to establish child support payable to S.M.G. (mother). We affirm.

The evidence established that father had an ownership interest in a closely held corporation located in Idaho. Mother met father in March 2000 while she was working for the company in Idaho.

After they began a personal relationship there, she learned she was pregnant. In April, May, and June 2000, father provided her with some support. When the relation-

ship ended in June or July, she informed father she intended to move to Colorado. She moved in July, and he assisted her with the move.

After mother arrived in Colorado, mother informed father she was applying for Medicaid and Colorado Child Care Assistance Program benefits for the child and she needed documentation of her sources of income, including the prebirth support father was paying. He mailed a letter to her dated July 17, 2000. He admitted understanding that his letter would be submitted as part of her application.

Father's letter stated: "I intend to pay [mother] $300.00 per month from August until January, at which time child support payments will be determined. The check will go out on or about the 10th of each month." Father mailed monthly payments from August through November 2000, and the child was born in Colorado in January 2001. When father did not send any further support, mother filed this action to establish paternity, to allocate parental responsibility, and to set child support and other costs and expenses. She served the petition and summons on father by mail.

Father responded with a motion to dismiss the petition for lack of jurisdiction, which the trial court denied. As relevant here, the trial court found father "knew and intended that his letter of intent would be relied upon ... by Colorado authorities in providing financial assistance to [mother and the child]." The court concluded that while the letter father sent to mother probably would have been insufficient alone to establish jurisdiction, when viewed in conjunction with father's other actions and their intended consequences, there was sufficient evidence to support the exercise of personal jurisdiction over father based on his transaction of business in Colorado within the meaning of the long-arm statute, § 13–1–124(1)(a), C.R.S.2002.

At a later hearing, the court entered permanent orders regarding child support, arrearages, parental responsibility, parenting time, and related issues. The court rejected mother's claim that father also owed her money for prebirth support and expenses pursuant to a contract between them.

Father appeals from the trial court's ruling regarding personal jurisdiction over him to establish his child support obligation. He does not appeal from the portions of the judgment allocating parental responsibilities or parenting time.

## I.

■ Initially, we reject mother's contention that father waived his objection to personal jurisdiction by participating in the proceedings, after his jurisdictional arguments were rejected, to defend his position on the issues of child support and arrearages.

In support of her argument, mother relies on cases in which nonresident litigants objected to jurisdiction, but then sought affirmative relief from the Colorado courts. *See T.L. Smith Co. v. Dist. Court,* 163 Colo. 444, 431 P.2d 454 (1967)(defendant waived jurisdiction by filing a permissive counterclaim seeking damages for plaintiff's breach of contract); *Fagerberg v. Webb,* 678 P.2d 544, 548 (Colo.App.1983)("By invoking the jurisdiction of the court in filing these permissible cross-claims and third-party complaints, [the non-resident defendant] waived any objection to the issue of in personam jurisdiction."), *aff'd in part and rev'd in part on other grounds sub nom. Webb v. Dessert Seed Co.,* 718 P.2d 1057 (Colo.1986).

By filing claims in the litigation that were not required to be filed, and that did not arise from the transactions on which the court based its initial assertion of jurisdiction, the nonresident defendants subjected themselves to the jurisdiction of the court for all purposes. *Harman v. Stillwell,* 944 P.2d 665, 668 (Colo.App.1997)(distinguishing earlier cases, and concluding defendant did not submit himself to jurisdiction by filing claim required by probate code).

Here, father has filed no documents analogous to a permissive counterclaim or cross-claim, and his requests for relief from the court arose from the paternity action filed by mother. Accordingly, we reject mother's contention that father waived his objection to personal jurisdiction by his participation in the proceedings.

## II.

Father contends the trial court erred in exercising personal jurisdiction over him. He maintains that such jurisdiction is not permitted by Colorado's long-arm statute and violates the Due Process Clause of the United States and Colorado Constitutions. We disagree.

### A.

Whether a court may properly assert personal jurisdiction over a party is a question of law, to be reviewed de novo by this court. *Union Pac. R.R. v. Equitas Ltd.*, 987 P.2d 954 (Colo.App.1999).

As relevant here, Colorado's long-arm statute provides that a person submits to the jurisdiction of the courts of this state concerning any cause of action arising from "[t]he transaction of any business within this state." Section 13–1–124(1)(a).

In adopting the long-arm statute, the General Assembly intended to extend the personal jurisdiction of Colorado's courts to the maximum limits permissible under the United States and Colorado Constitutions. *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267 (Colo.2002).

A party invoking the Colorado long-arm statute must allege sufficient facts to support a reasonable inference that the nonresident defendant has engaged in conduct under the statute which subjects the nonresident to the personal jurisdiction of the court. A prima facie showing of threshold jurisdiction is sufficient and may be determined from allegations in the complaint or evidence introduced at any hearing conducted in the matter. *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.*

Due process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. Individuals have fair warning when their conduct and connection with the forum state are such that they should reasonably anticipate being haled into court there. Hence, unilateral activity by those who claim some relationship with a nonresident defendant cannot in itself satisfy the requirement of contact with the forum state. *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.*

It is essential that there be some act by which the nonresident purposefully avails himself or herself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.* The "purposeful availment" requirement ensures that a nonresident will not be haled into a jurisdiction solely as a result of random or fortuitous contacts. *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra*, 40 P.3d at 1270.

"For a nonresident to be subjected to the general jurisdiction of the forum state by his [or her] activities there, those activities must be continuous and systematic, of a general business nature." *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra*, 40 P.3d at 1271. However, "for specific jurisdiction to adjudicate claims arising from [a nonresident's] contacts with the forum state, the fair warning requirement is satisfied as long as the litigation results from alleged injuries that 'arise out of or relate to' activities that are significant and purposefully directed by the defendant at residents of the forum." *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra*, 40 P.3d at 1271 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)).

In certain situations, a single act may support specific jurisdiction. However, in addition to the requirement of purposeful availment, the contact also must proximately result from actions of the nonresident that create a substantial connection with the forum state. Single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum. *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.*

### B.

In concluding that father had engaged in the transaction of business here and that the

purposeful availment requirement had been met, the trial court relied on father's sending mother the July 2000 letter for the purpose of assisting her in applying for public assistance benefits for their child. The trial court specifically found that father "knew and intended that his letter of intent would be relied upon ... by Colorado authorities" for that purpose.

When a nonresident has deliberately created continuing obligations between himself or herself and residents of the forum state, he or she has manifestly availed himself or herself of the privilege of conducting business there. *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.*

The Colorado Child Care Assistance Program (C–CAP) is a state public assistance program provided through the counties. *See* § 26–2–801, et seq., C.R.S.2002. Any payment of public assistance by a county department of social services made for the benefit of a child "creates a debt, which is due and owing to the county department of social services, recoverable by the county as a debt due to the state by the parent or parents who are responsible for support of the dependent child." Section 14–14–104(1), C.R.S.2002; *see* § 14–14–102(7), C.R.S 2002, (payments and services provided under title 26, article 2, are included in definition of "public assistance").

Where no child support order has been issued, a county's delegate child support enforcement unit may initiate an action to establish the amount of child support debt accrued. Section 14–14–104(2), C.R.S.2002.

Although Medicaid is not a public assistance program, *see* § 26–4–101, et seq., C.R.S.2002, mother's eligibility for Medicaid was also impacted by the amount of father's support payments. Mother testified that she submitted father's letter to "[s]ocial services and C–CAP" and that she knew the support documented in the letter "would actually reduce the amount [she would] receive from the state." Father testified he knew she "was going to submit [the letter] to Colorado's [C]hild [Care] [A]ssistance [P]rogram and to Medicaid." The evidence thus supports the trial court's finding that father "knew and intended that his letter of intent would be relied upon ... by Colorado authorities" for that purpose.

Under these circumstances, we agree with the trial court that father transacted business in Colorado by sending the letter. The purpose of father's letter was to help mother obtain public assistance and Medicaid benefits in Colorado on behalf of the child, for whose support he is in part responsible. The natural consequence of requesting and obtaining such public assistance was the creation of a debt by operation of law. *See* § 14–14–104(1). Father purposefully availed himself of a benefit of this state, and he therefore reasonably should have anticipated he might be haled into a Colorado court as a result. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."); *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.*

A number of other jurisdictions have approved the use of the transaction of business as a basis for jurisdiction in dissolution and child support actions. We perceive no reason why the transaction of business may not similarly be a basis for jurisdiction under Colorado's long-arm statute.

In a postdecree petition for maintenance and child support, the Delaware Family Court rejected the nonresident father's argument that the state's long-arm statute was inapplicable in a support proceeding. The court observed that "[r]apid technological developments improving the speed and facility of transportation necessitate an expanded scope of jurisdiction." *Prybolsky v. Prybolsky,* 430 A.2d 804, 806 (Del.Fam.Ct.1981)(quoting *Egbert v. Egbert,* 125 N.J.Super. 171, 309 A.2d 746, 748–49 (1973)). The court acknowledged the state's right to seek "reimbursement for public funds, if any, expended for the welfare of [nonresident's] dependents." *Prybolsky v. Prybolsky, supra,* 430 A.2d at 806; *see also Van Wagenberg v. Van Wagenberg,* 241 Md. 154, 215 A.2d 812 (1966)(rejecting contention

that the transaction of business should be limited to activities that are essentially commercial in nature and should exclude marital separation agreements); *Underwood v. Underwood*, 92 Misc.2d 359, 399 N.Y.S.2d 967 (N.Y.Sup.Ct.1977)(rejecting argument that execution of a domestic relations stipulation will not sustain long-arm jurisdiction where nonresident acted purposefully in connection with agreement); *Lawrenz v. Lawrenz*, 65 Misc.2d 627, 318 N.Y.S.2d 610 (N.Y.Fam.Ct.1971)(transaction of business is not limited strictly to commerce, and society has strong interest in the security of family life); *cf. N.S. v. S.S.*, 709 P.2d 6 (Colo.App. 1985)(in paternity action against a nonresident defendant involving a child not conceived in Colorado, evidence showing that a New York corporation was defendant's alter ego was sufficient to establish personal jurisdiction over defendant based on corporation's transaction of business in Colorado).

### C.

In the family law context, the United States Supreme Court has rejected the proposition that a noncustodial parent's acquiescence concerning a child's residence confers jurisdiction over him or her in whatever state the custodial parent decides to live, *see Kulko v. Superior Ct.*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), and Colorado has followed suit. *See In re Marriage of Ness*, 759 P.2d 844 (Colo.App.1988); *see also In re Marriage of Zinke*, 967 P.2d 210 (Colo.App. 1998); *Goldenhersh v. Febrey*, 711 P.2d 717 (Colo.App.1985).

However, contrary to father's contention, *Kulko v. Superior Court, supra*, does not require a different result here. In *Kulko*, the United States Supreme Court concluded the father's conduct was a product solely of the mother's unilateral action, and it rejected the argument that the child's presence within the forum state of California conferred benefits on the father, such as police and fire protection, public schooling, hospital services, recreational facilities, libraries, and museums.

The *Kulko* Court concluded that "[such public] services provided by the State were essentially benefits to the child, not the fa-

ther, and in any event were not benefits that [the father] purposefully sought for himself." *Kulko v. Superior Court, supra*, 436 U.S. at 94 n. 7, 98 S.Ct. at 1698.

The *Kulko* Court further concluded personal jurisdiction also was not warranted by the financial benefit the father derived from the child's absence from his household. Distinguishing issues of jurisdiction from those of liability for child support, the Court noted that the mother could have moved to modify the father's child support obligation in New York, where the parties were divorced and where permanent orders were entered. Thereafter, the mother could have sought enforcement of such modification in California or any other jurisdiction. The Supreme Court concluded any financial advantage to the father from the child's presence in California was attributable to the mother's failure to seek such modification in New York.

By contrast, father's testimony here established that his conduct in sending the letter to Colorado was a purposeful act, not a random or fortuitous contact, in that he affirmatively assisted mother in seeking public assistance for the child from this state. Unlike the circumstances in *Kulko*, his conduct went beyond merely realizing through his child the benefit of incidental services made available to the public at large, such as police and fire protection.

In this case, the trial court found that mother's higher income, as described in the letter, would have resulted in a lower amount of benefits. Hence, the significance of father's act was not tied to any concrete financial benefit or detriment in relation to child support, but arose from his role in soliciting and anticipating the child's receiving public assistance and the resulting statutorily created debt. Thus, the circumstances here are distinguishable from those in *Kulko*.

This case also is distinguishable from *In re Marriage of Malwitz*, —— P.3d ——, 2003 WL 21026719 (Colo.App. No. 02CA0056, May 8, 2003). There, a division of this court held the trial court erred in exercising personal jurisdiction over a father pursuant to the Uniform Interstate Family Support Act (UIFSA), § 14-5-101, et seq., C.R.S.2002,

because the trial court did not make a finding that the father had minimum contacts with this state.

UIFSA enumerates additional bases for jurisdiction over nonresidents in proceedings to establish support orders or to determine parentage. It provides, inter alia, that a Colorado court may exercise personal jurisdiction over a nonresident individual if "[t]here is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction." Section 14–5–201(7), C.R.S.2002.

In *Malwitz*, the child was conceived in Texas while the father and the mother were living there as common law spouses. After the father allegedly threatened her with acts of domestic violence, the mother moved to Colorado while she was pregnant. She filed an action here seeking a dissolution, child support, and permanent orders. The father was personally served in Texas, and he contested Colorado's jurisdiction. Following a hearing, the trial court concluded it had personal jurisdiction over him because his acts of violence forced the mother to move from Texas.

A division of this court reversed, concluding minimum contacts were *not* established by the trial court's finding that the "father was aware that most of mother's family ties were in Colorado and that it was foreseeable that Colorado would be a likely place for her to go with the minor child to escape domestic violence." The division further concluded that even assuming the father's actions in Texas were tortious, they occurred before the mother's move to Colorado. Accordingly, the division concluded the mother did not meet her burden of establishing a prima facie showing of threshold jurisdiction.

Here, mother did not bring her petition under UIFSA, nor did she allege a tortious act. She asserted jurisdiction under § 13–1–124(1)(a), which specifically authorizes the exercise of personal jurisdiction over a nonresident based on his transaction of business in Colorado. The trial court found, and we agree, that the purposeful availment requirement was met. *See Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.*

### D.

We also conclude the assertion of personal jurisdiction over father comports with fair play and substantial justice.

Where minimum contacts with the forum state have been established, the court must determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. The court should consider factors such as the burden on the nonresident, the forum state's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief. These considerations may sometimes establish the reasonableness of jurisdiction upon a "lesser showing of minimum contacts than would otherwise be required." *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra*, 40 P.3d at 1272.

Father has described the burdens of litigating in a distant forum, including costs and attorneys fees. The record reflects that he appeared for numerous hearings by telephone.

However, Colorado has a strong interest in adjudicating this dispute. States generally have an interest in providing their residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *See Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.*

The child that is the subject of this paternity action was born in Colorado, she continues to reside here, and she has no continuing connection with any other state. When mother filed this action, no other state had assumed jurisdiction over the matter, Colorado's assertion of jurisdiction does not interfere with the jurisdiction of any other state, and the trial court found the child has a significant interest "in obtaining convenient and effective relief" in Colorado. We therefore conclude that Colorado's exercise of jurisdiction over father is not unreasonable and satisfies due process.

In summary, we conclude that father's letter, sent with the intention of assisting in mother's obtaining public assistance for the child from the State of Colorado, constituted the transaction of business and was a signifi-

cant contact with this state sufficient to confer personal jurisdiction over him. Accordingly, the trial court did not err in exercising personal jurisdiction over him.

### III.

Given our conclusion that the court properly exercised jurisdiction over father under § 13–1–124(1)(a), we need not address father's additional contention that the trial court lacked jurisdiction over him after it denied mother's contract claim.

Judgment affirmed.

Judge KAPELKE and Judge DAILEY concur.