**In re The FOUNDATION FOR KNOWLEDGE IN DEVELOPMENT, d/b/a Sensory Processing Disorder Foundation, a Colorado 501(c)(3) Public Charity, Plaintiff**

v.

**INTERACTIVE DESIGN CONSULTANTS, LLC, a Rhode Island corporation, and Rick DiNobile, Defendants.**

No. 10SA58.

Supreme Court of Colorado, En Banc.

June 28, 2010.

676

Holland & Hart LLP, Gregory A. Eurich, Joseph Neguse, Denver, Colorado, Attorneys for Plaintiff.

Harris, Karstaedt, Jamison & Powers, P.C., Jamey W. Jamison, Coulter M. Bump, Englewood, Colorado, Attorneys for Defendants.

Justice RICE delivered the Opinion of the Court.

In this original proceeding taken pursuant to C.A.R. 21, we review an order from the Arapahoe County District Court denying the Defendants' motion to dismiss for lack of personal jurisdiction. We find that the trial court properly determined that it had personal jurisdiction over the Defendants based on their contacts with Colorado regarding the subject matter of the dispute. We therefore affirm the trial court's order and remand for further proceedings.

## I. Facts and Procedural History

Plaintiff, The Sensory Processing Disorder Foundation ("SPDF"), is a nonprofit corporation headquartered in Colorado. SPDF conducts research, education, and advocacy on behalf of children with an inability to regulate sensation in a normal manner. In 2008, SPDF was considering developing web-based learning programs to provide information and interactive features to those interested in learning more about the disorder.

An SPDF representative from Colorado contacted co-Defendant Rick DiNobile, who resided in Rhode Island and was the sole owner of co-Defendant Interactive Design Consultants (collectively "DiNobile"), to inquire about whether DiNobile would be interested in designing interactive e-learning modules for SPDF.[1] The parties discussed

---

1. SPDF learned about DiNobile through Michelle Clarke, SPDF's Education Program Manager. Clarke was familiar with DiNobile because he

the specifics of SPDF's needs through a series of emails and telephone conversations between DiNobile in Rhode Island and SPDF in Colorado. Following these discussions, DiNobile drafted a contract to memorialize the parties' discussions. The parties then negotiated several changes to the draft agreement. SPDF signed the final agreement in Colorado and faxed it to DiNobile, who signed it in Rhode Island and then faxed the fully executed agreement back to SPDF.

DiNobile commenced work on the project in Rhode Island. DiNobile never traveled to Colorado in relation to his work with SPDF. From Colorado, SPDF exchanged hundreds of email and telephone communications with DiNobile. Representatives from SPDF spent significant time in Colorado developing the content for the e-learning program, while DiNobile performed substantial work under the agreement in Rhode Island.

Each party ultimately disputed the other's compliance with the agreement. SPDF filed suit in Colorado, alleging breach of contract as well as negligent misrepresentation. DiNobile moved to dismiss under C.R.C.P. 12(b)(2), arguing that Colorado did not have personal jurisdiction because he conducted all his business outside Colorado.[2] The trial court denied DiNobile's motion. DiNobile appealed, and we granted review using the discretion afforded to this court under C.A.R. 21.

## II. Analysis

The trial court did not hold a hearing on DiNobile's 12(b)(2) motion, but rather relied on the documentary evidence presented by the parties including the pleadings, affidavits, and the contract at issue. In denying the motion to dismiss, the trial court issued a written order stating that "Plaintiff has established sufficient contacts for this case to proceed in Colorado."

### A. Procedure

■ A trial court may decide a 12(b)(2) motion to dismiss based solely on documenta-

ry evidence or by holding a hearing. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1192 (Colo.2005). In this case, neither party requested a hearing nor do they argue for one in this appeal. When the court bases its determination solely on documentary evidence, the plaintiff must make a prima facie showing of personal jurisdiction. *Id.*

■ "A prima facie showing exists where the plaintiff raises a reasonable inference that the court has jurisdiction over the defendant." *Goettman v. N. Fork Valley Rest.*, 176 P.3d 60, 66 (Colo.2007). This is a light burden intended only to "screen out 'cases in which personal jurisdiction is obviously lacking, and those in which the jurisdictional challenge is patently bogus.'" *Archangel*, 123 P.3d at 1192 (quoting *Foster–Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir.1995)). However, "the plaintiff ultimately bears the burden of demonstrating personal jurisdiction by the close of trial by a preponderance of the evidence if the defendant raises the challenge again at that time." *Archangel*, 123 P.3d at 1192 n. 3.

■ When basing its determination solely on documentary evidence, the trial court may not resolve disputed issues of jurisdictional fact. *Goettman*, 176 P.3d at 66. "[T]he allegations in the complaint must be accepted as true to the extent they are not contradicted by the defendant's competent evidence, and where the parties' competent evidence presents conflicting facts, these discrepancies must be resolved in the plaintiff's favor." *Archangel*, 123 P.3d at 1192.

### B. Requirements of Colorado's Long–Arm Statute and Due Process

■ Because SPDF is seeking jurisdiction in Colorado over a nonresident defendant, it must satisfy both Colorado's long-arm statute and the constitutional requirements of due process. *Goettman*, 176 P.3d at 66–67. Colorado's long-arm statute extends jurisdiction to the maximum extent allowed by the due process requirements of the Constitu-

---

completed several projects for one of Clarke's previous employers in Colorado.

2. C.R.C.P. 12(b)(2) states that "the following defenses may at the option of the pleader be made by motion: ... (2) lack of jurisdiction over the person."

tion.[3] *Scheuer v. Dist. Court*, 684 P.2d 249, 250 (Colo.1984). Thus, if a plaintiff satisfies the constitutional requirements, the long-arm statute is also satisfied. *Goettman*, 176 P.3d at 67. With respect to tort claims, this court has "previously indicated that negligent conduct in a foreign state which causes injury in Colorado may be deemed an act committed within Colorado for purposes of the long-arm statute." *Scheuer*, 684 P.2d at 251.

■ To satisfy the requirements of due process, a defendant must have "certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "Due process requires that a defendant have certain minimum contacts with the forum state so that he may foresee being answerable in court there." *Archangel*, 123 P.3d at 1194. The defendant must take some action by which he "purposefully avails himself of the privilege of conducting activities in the forum state so that he will not be subject to personal jurisdiction solely as a result of random or fortuitous contacts or the unilateral activity of a third party." *Goettman*, 176 P.3d at 67 (internal quotations omitted).

■ The minimum amount of contacts required for Colorado to exercise personal jurisdiction depends on whether the plaintiff has alleged general or specific jurisdiction. *Goettman*, 176 P.3d at 67. "A court has general jurisdiction over a defendant if the defendant conducted continuous and systematic activities that are of a general business nature in the forum state." *Goettman*, 176 P.3d at 67. A court has specific jurisdiction over a defendant if the "injuries triggering the litigation arise out of and are related to activities that are significant and purposefully directed by the defendant at the residents of the forum state." *Archangel*, 123 P.3d at 1194 (internal quotation omitted).

SPDF has not alleged that DiNobile should be subject to general jurisdiction in Colorado. Thus, we first review the documentary evidence de novo to determine whether specific jurisdiction is appropriate. *Goettman*, 176 P.3d at 68. If we find that the trial court may exercise specific jurisdiction, we must then determine whether the exercise of personal jurisdiction over the nonresident defendant is reasonable. *Id.*

### 1. Specific Jurisdiction for SPDF's Contract Claim

■ A court may exercise specific jurisdiction where the alleged injury arises out of and is related to "activities that are significant and purposefully directed by the defendant at residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). For a defendant to be subject to specific jurisdiction, the court must determine: "(1) whether the defendant purposefully availed himself of the privilege of conducting business in the forum state, and (2), whether the litigation arises out of the defendant's forum-related contacts." *Archangel*, 123 P.3d at 1194 (internal quotations omitted).

Using this analytical framework, we must determine whether, based on the documentary evidence presented to the trial court, SPDF presented sufficient evidence supporting its breach of contract claim for the trial court to exercise specific jurisdiction over DiNobile. The evidence in this case includes SPDF's complaint, an affidavit from Michelle Clarke (SPDF's Education Program Manager), an affidavit from DiNobile, and a copy of the executed agreement. From this evidence we must determine whether DiNobile purposefully availed himself of the privilege of doing business in Colorado and whether SPDF's claims arise out of DiNobile's contacts. *See Goettman*, 176 P.3d at 69.

---

**3.** Colorado's long-arm statute states, in pertinent part:

Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person ... to the jurisdic-

tion of the courts of this state concerning any cause of action arising from: (a) The transaction of any business within this state; (b) The commission of a tortious act within this state....

§ 13–1–124(1)(a)–(b), C.R.S. (2009).

### a. Whether DiNobile Purposefully Availed Himself of the Privilege of Conducting Business in Colorado

As to the first part of this analysis, "[t]he purposeful availment requirement precludes personal jurisdiction resulting from 'random, fortuitous, or attenuated contacts.'" *Id.* (quoting *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.,* 385 F.3d 1291, 1296 (10th Cir.2004)). The actions taken by the defendant "are significant in determining whether the defendant purposefully availed himself of the privilege of conducting business in the forum state." *Archangel,* 123 P.3d at 1194. If the defendant deliberately created "continuing obligations" with the forum state, he has availed himself of the privilege of conducting business there. *Id.* (citing *Keefe v. Kirschenbaum & Kirschenbaum, P.C.,* 40 P.3d 1267, 1271 (Colo.2002)).

The evidence presented to the trial court demonstrates that the parties' agreement required, and resulted in, significant contacts between DiNobile and SPDF. The complaint contains a statement of jurisdiction that reads:

> [The Araphahoe County District Court] has jurisdiction over this matter and personal jurisdiction over [DiNobile] because [DiNobile] entered into a contract with SPDF in Arapahoe County, Colorado, in September of 2008 and [DiNobile] represented that [he] could perform the work required by the contract, a representation upon which SPDF reasonably relied. A substantial portion of the events giving rise to Plaintiff's claims occurred in Arapahoe County, Colorado.

Furthermore, the complaint states that Colorado "has a substantial interest in this matter as it involves wrongs committed against a Colorado public charity which therefore affects the People of the State of Colorado."

Clarke's affidavit highlights the amount of work the agreement required SPDF to perform and the actions taken by DiNobile in the course of conducting business with a Colorado nonprofit corporation. *See Archangel,* 123 P.3d at 1194. She states that she worked with DiNobile on two prior projects in Colorado for a previous employer. For these projects, DiNobile traveled to Colorado on numerous occasions. Pertaining to the contract at issue here, Clarke states that all negotiations on behalf of SPDF were conducted by email or telephone communications originating in Colorado. Clarke signed the agreement in Colorado on behalf of SPDF. Clarke states that SPDF"s executive director, Dr. Lucy Miller,

> invested hundreds of hours in the development of the E–Learning program content. All core content for the E–Learning program was developed by Dr. Miller and SPDF in the State of Colorado, including conversion of power point material into storyboards, editing and expanding on storyboard content, preparing graphics and video recording of Dr. Miller as well as her audio narration. In addition, all phases of testing of the E–Learning program were conducted by SPDF in Colorado as well as development of a website landing page and pre-launch registration and payment functionality, content and graphics for the E–Learning portal, and administration of E–Learning users. The program content is the proprietary material of SPDF.

Clarke never traveled outside the state of Colorado concerning the agreement. Clarke claims that all contacts by SPDF with DiNobile originated in Colorado. Clarke estimates that she "personally had hundreds of e-mail and telephone communications with Mr. DiNobile from Colorado."

DiNobile's affidavit highlights the activities that took place outside Colorado. He states that he did not solicit business from SPDF, rather an SPDF representative contacted him in Rhode Island. DiNobile drafted the agreement in Rhode Island and sent it to SPDF in Colorado. DiNobile signed the final agreement in Rhode Island. He states that he performed all of the services required by the agreement in Rhode Island. Neither DiNobile nor his representatives performed any work in Colorado. Finally, DiNobile claims that he has "never traveled to Colorado in furtherance of this Agreement or to transact any business with Plaintiff in Colorado."

The agreement itself provides guidance as to whether DiNobile availed himself of

the privilege of conducting business in Colorado and whether DiNobile deliberately created continuing obligations with Colorado. *See Archangel,* 123 P.3d at 1194. At the outset, the agreement states that it "is entered into between [DiNobile] and [SPDF] for the design and development of four e-learning modules by [DiNobile] as more particularly described [herein]." Per the agreement, DiNobile would collect any e-commerce revenue and remit seventy percent to SPDF. DiNobile was to charge SPDF a monthly hosting/usage fee. Travel expenses incurred in performance of the agreement were to be invoiced separately, and DiNobile was to provide SPDF an estimate of any such expenses. DiNobile would host the e-learning modules within an online learning environment. Current users would be directed from SPDF's web site to the learning portal, and prospective users would be directed to a website hosted by DiNobile to facilitate the financial transaction.

In the section of the agreement titled "Program Development," the parties stated that "[t]he following outlines the various phases of program development and the deliverables output from each phase. SPDF will be an active partner within each of these phases and will assign a project resource to assist in project management, analysis and design, and final course delivery and implementation." As part of the project, DiNobile was to produce detailed storyboards for elements of the program and then send the storyboards to SPDF for its approval. SPDF was required to "approve each storyboard individually before the next phase of development begins." DiNobile's programmers were then to use an approved design document along with the approved storyboards as their main program specifications.

The agreement further stated that SPDF had the ability to test the program extensively before it was completed and launched. The test feedback would be analyzed by SPDF and DiNobile, and approved changes would be submitted to DiNobile. After any corrections, SPDF would then approve the final version of the program. Finally, DiNobile was to deliver the final version via an externally hosted learning portal, which SPDF was again required to approve.

The agreement also identifies specific individuals and their duties under the agreement. For SPDF, Dr. Miller was to oversee the overall project and was responsible for "approval of key milestones and deliverables." She was also to provide all subject matter expertise for the program content. Clarke was the key point of contact at SPDF for all project resources. She would provide specific support to project resources related to content, design, development, and implementation. Clarke was also to manage the pilot testing process. For Interactive Design Consultants, DiNobile was the key point of contact. He would provide the final program master to the client and assist in its implementation and deployment. He would also provide technical support during design, development, and deployment.

Based on this evidence we conclude that SPDF adequately established that Colorado has specific jurisdiction for its contract claim. We determine that the documentary evidence is adequate to show that DiNobile purposefully directed his business to SPDF, a resident of Colorado. Although controlling cases have suggested that a contractual relationship alone is insufficient to establish personal jurisdiction, *see Burger King Corp.,* 471 U.S. at 478, 105 S.Ct. 2174, here DiNobile had numerous additional contacts with Colorado. The agreement required that significant work be performed in Colorado by SPDF and outside Colorado by DiNobile. DiNobile communicated extensively with SPDF representatives in Colorado concerning their duties under the agreement. Per the agreement, DiNobile was required to send various parts of the project to SPDF in Colorado for its approval and was also required to remit a percentage of e-commerce payments to SPDF.

DiNobile pursued a business relationship with a corporation that was, at all relevant times, headquartered in Colorado. In these situations, the Supreme Court has "rejected the notion that an absence of physical contacts can defeat personal jurisdiction." *Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. 2174 (also noting that "it is an inescapable

fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines"). The contacts here are not "random, fortuitous, or attenuated" in nature and sufficiently establish that DiNobile purposefully availed himself of the privilege of conducting business in Colorado. *See Goettman*, 176 P.3d at 67.

### b. Whether the Litigation Arises out of DiNobile's Contacts

■ The second step of our specific jurisdiction inquiry asks whether the litigation arises out of the defendant's contacts with the forum state. *Id.* at 69. To meet this requirement, "the actions of the defendant giving rise to the litigation must have created a 'substantial connection' with the forum state." *Archangel*, 123 P.3d at 1194.

■ SPDF's contract claim centers on the provisions of the agreement, which were negotiated by the parties between Rhode Island and Colorado, and DiNobile's failure to adequately perform under that agreement. Thus, we conclude that SPDF's breach of contract claim arises directly out of DiNobile's contacts with Colorado. DiNobile's actions under the agreement, as described above, created a substantial connection with Colorado and are sufficient to satisfy this part of the specific jurisdiction analysis.

### 2. Specific Jurisdiction for SPDF's Tort Claim

In many cases "the commission of a tort, in itself, creates a sufficient nexus between a defendant and the forum state that satisfies the due process inquiry and establishes specific jurisdiction." *Goettman*, 176 P.3d at 69. "In such cases, there is no need for further minimum contacts analysis because the defendant is so connected with the forum state that traditional notions of fair play and substantial justice are not offended by the forum state's exercise of personal jurisdiction over the defendant." *Id.* (citing *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 237 (Colo.1992)). "In other cases, even if an injury is sustained in the forum state, the defendant's tortious acts may be so remote as to require a closer nexus between the defendant and the state." *D & D Fuller CATV Constr., Inc. v. Pace*, 780 P.2d 520, 525 (Colo.1989) (citing *Scheuer*, 684 P.2d at 249 (Colo.1984), *and Fleet Leasing, Inc. v. Dist. Court*, 649 P.2d 1074 (Colo.1982)). In these cases, the court must analyze whether the defendant has the required minimum contacts with Colorado. *D & D Fuller CATV Constr., Inc.*, 780 P.2d at 525.

■ Here, we find that, accepting the allegations in the complaint as true, SPDF's claim of negligent misrepresentation alleged a sufficient nexus between DiNobile and Colorado for the trial court to exercise specific jurisdiction.[4] The affidavits do not address the alleged pre-contract misrepresentations, so we look only at the allegations in SPDF's complaint. SPDF claims that the misrepresentations occurred through telephone and email conversations exchanged between Rhode Island and Colorado. Although the extent of these communications is unclear, SPDF alleges that DiNobile was negligent in representing his skill and expertise throughout the parties' communications.

■ As stated above, in most cases the commission of a tortious act in Colorado is sufficient for a Colorado court to exercise jurisdiction over a nonresident defendant. *Goettman*, 176 P.3d at 69. But even if the tortious act alone is not sufficient in this case, DiNobile's contacts with Colorado are adequate to satisfy due process. The alleged misrepresentations occurred in communications intentionally directed at a Colorado corporation. DiNobile recognized that he was negotiating with a corporation headquartered in Colorado and certainly understood that his communications with SPDF would be received in Colorado. Furthermore, SPDF suffered the alleged injury from DiNobile's tortious conduct in Colorado. Thus, DiNobile had sufficient contacts in Colorado relat-

---

4. We decline to review DiNobile's claim that the economic loss rule precludes assertion of the tort claim. Here, we are only concerned with personal jurisdiction, and DiNobile's allegation that the tort claim is precluded can be addressed by a separate motion to the trial court.

ed to the tort claim for the trial court to exercise specific jurisdiction.[5]

### 3. Reasonableness

■■■ If a court finds, as we have, that it may exercise specific jurisdiction, it must then "determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Archangel,* 123 P.3d at 1195. This determination is essentially one of reasonableness. *Id.* Among the factors a court may consider in determining reasonableness are: (1) the burden on the defendant; (2) the forum state's interest in resolving the controversy; and (3) the plaintiff's interest in attaining effective and convenient relief. *Id.* (citing *Keefe,* 40 P.3d at 1271–72).

■■ Starting with the first factor, defending an action in Colorado would place an undeniable burden on DiNobile. DiNobile does not reside in Colorado, and it is likely that the evidence of his work performed on the project will be outside the state. But much of the evidence is presumably electronic, thereby mitigating the burden of gathering and presenting this evidence in Colorado. Second, Colorado has a strong interest in resolving any controversy involving a nonprofit corporation headquartered

and incorporated within the state. This is undoubtedly the case here: the dispute involves a contract entered into by a Colorado corporation that was the result of extensive communication with residents of Colorado. Finally, SPDF's interest in litigating the case in Colorado is naturally strong. SPDF is headquartered in Colorado, and most of the actions performed by SPDF under the agreement took place in Colorado. Examining these factors together, we hold that it is reasonable for Colorado to exercise personal jurisdiction over DiNobile.

### III. Conclusion

We affirm the trial court's determination and hold that, based on the documentary evidence presented to the trial court, SPDF has made a prima facie showing that Colorado has personal jurisdiction over DiNobile for the contract and tort claims in this case. Accordingly, we remand the case to the trial court for further proceedings.

5. Because there are sufficient contacts to exercise jurisdiction for each claim, we need not address whether sufficient contacts for only one claim would suffice to exercise jurisdiction for both claims on the basis that the claims arise from the same course of action.