**ARCHANGEL DIAMOND CORPORATION, Plaintiff–Appellant and Cross–Appellee,**

v.

**ARKHANGELSKGEOLDOBYCHA, Defendant–Appellee and Cross–Appellant,**

**and**

**Lukoil, Defendant–Appellee.**

No. 02CA2368.

Colorado Court of Appeals, Div. II.

March 25, 2004.

Rehearing Denied June 17, 2004.

Dorsey & Whitney, LLP, Tucker K. Trautman, Scott P. Sinor, Denver, Colorado; Marks & Sokolov, LLC, Bruce S. Marks, Philadelphia, Pennsylvania, for Plaintiff–Appellant and Cross–Appellee.

Davis, Graham & Stubbs, LLP, Anthony J. Shaheen, Tom McNamara, Denver, Colorado; Winston, & Strawn, LLP, Michael D. Burrows, Robert M. Buschmann, Catherine B. Schumacher, New York, New York, for Defendant–Appellee and Cross–Appellant.

Rothgerber, Johnson & Lyons, LLP, Frederick J. Baumann, Douglas B. Tumminello, Denver, Colorado; Akin, Gump, Strauss, Hauer & Feld, LLP, Michael K. Swan, Trenton T. McKenna, Houston, Texas, for Defendant–Appellee.

Opinion by Judge ROTHENBERG.

In this commercial dispute, plaintiff, Archangel Diamond Corporation, appeals the order dismissing its claims and the summary judgment entered in favor of defendants, Arkhangelskgeoldobycha (AGD) and Lukoil, for lack of personal jurisdiction.

The primary issues in this appeal are (1) whether the trial court erred in resolving factual disputes to determine whether it could exercise personal jurisdiction over the nonresident defendants; and (2) whether the court erred in concluding it lacked such jurisdiction. Because we conclude the trial court properly resolved these issues, we affirm.

## I. Background

Archangel is a Canadian public company that has maintained its principal place of business in Canada at all relevant times, except between 1998 and 2002 when it moved its principal office to Colorado.

AGD is a Russian public company in the oil, gas, and mining business with its principal place of business in Arkhangelsk, Russia.

Lukoil is a Russian public company. Its principal place of business is in Moscow, Russia. It owns a majority interest in AGD.

In 1993, AGD's predecessor applied for and obtained a license from the Russian government to explore and develop diamond fields in Arkhangelsk, Russia. The predecessors of Archangel and AGD entered into a contract in which Archangel's predecessor agreed to finance preliminary stages of the exploration and development, and AGD's predecessor agreed to perform geological work under the license. The parties agreed that if initial exploration showed the field would be commercially productive, they would establish a joint stock company that would construct a mine and operate the field, and AGD would grant its rights under the license to that company.

The 1993 agreement was negotiated and executed in Russia. It provided for arbitration of disputes before the Stockholm Chamber of Commerce under the rules of the United Nations Commission for International Trade Law.

After the initial exploration of the diamond fields in 1994, Archangel, AGD, and others formed a Russian joint stock company (joint venture) and entered into a joint activity agreement to use the license. This agreement was negotiated and executed in Russia and provided that disputes arising therefrom were to be resolved in the Russian courts.

In 1996, explorers discovered an area containing diamonds with an estimated worth of $5 billion. However, as of 1998, AGD had not yet transferred the license to the joint venture. Archangel asserts that it negotiated a second agreement with AGD in 1999 requiring AGD to transfer the license rights to the joint venture within 180 days, but the transfer did not occur.

In 2001, Archangel filed this action in Colorado seeking compensatory and exemplary damages and injunctive relief. Archangel alleged that it became a Colorado resident in 1998 when it moved its principal place of business from Canada to Colorado. Archangel asserted tort claims against AGD and Lukoil for fraud, aiding and abetting fraud, conspiracy, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment.

Archangel also asserted a separate tort claim against Lukoil for intentional interference with contractual relations and separate claims against AGD only for breach of contract and breach of good faith and fair dealing.

AGD and Lukoil moved to dismiss on various grounds. The trial court granted the motion and entered judgment in their favor, concluding that it lacked personal jurisdiction over either defendant and that Archangel's tort claims were barred by the economic loss rule.

In 2002, Archangel moved its principal place of business back to Canada.

## II. Personal Jurisdiction

Archangel contends the trial court erred in granting defendants' motion to dismiss for lack of personal jurisdiction. According to Archangel, it established personal jurisdiction over AGD and Lukoil because both defendants purposefully availed themselves of the privilege of conducting business activities in Colorado and also committed tortious acts directed into the state. We disagree.

### A. Colorado's Long–Arm Statute

■ The Colorado long-arm statute was intended to extend the personal jurisdiction of Colorado's courts to their maximum limits permissible under the United States and Colorado Constitutions. *Keefe v. Kirschenbaum & Kirschenbaum, P.C.,* 40 P.3d 1267 (Colo. 2002).

As relevant here, the Colorado long-arm statute permits the jurisdiction of Colorado courts to extend to causes of action arising from a nonresident defendant's transaction of business within this state or the commission of a tortious act within this state. Section 13–1–124(1)(a)–(b), C.R.S.2003.

■ To be subject to long-arm statute jurisdiction, a nonresident defendant must have minimum contacts with Colorado or commit some act by which it "purposefully avails itself of the privilege of conducting activities" in Colorado. *Scheuer v. Dist. Court,* 684 P.2d 249, 251 (Colo.1984)(quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)).

■ A plaintiff seeking relief under the long-arm statute must allege sufficient facts to support a reasonable inference that the nonresident defendant has engaged in conduct subjecting the nonresident to personal jurisdiction. A prima facie showing of threshold jurisdiction may be found from allegations in the complaint and from sufficient evidence introduced in any hearing conducted on the matter. *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra; In re Parental Responsibilities of H.Z.G.,* 77 P.3d 848 (Colo. App.2003); *In re Marriage of Malwitz,* 81 P.3d 1076 (Colo.App.2003).

■ Threshold jurisdiction may be established where tortious conduct initiated in another state causes injury in Colorado and where requiring a defendant to appear in this state would be consistent with due process of law. *D & D Fuller CATV Constr., Inc. v. Pace,* 780 P.2d 520, 524 (Colo.1989).

### B. Due Process

■ After determining whether the requirements of the long-arm statute have been met, the court must separately determine whether a defendant has the requisite minimum contacts to satisfy due process. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ Due process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of another state. They have fair warning when their conduct and connection with the forum state are such that they should reasonably anticipate being haled into court there. *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.*

■ Unilateral activity by those who claim some relationship with a nonresident defendant does not in itself satisfy the requirement of contact with the forum state. There must be some act by which the nonresident purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the forum state's laws. The "purposeful availment" requirement ensures that a nonresident will not be haled into a jurisdiction solely as a result of random or

fortuitous contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra,* 40 P.3d at 1270.

■ "For a nonresident to be subjected to the general jurisdiction of the forum state by his [her, or its] activities there, those activities must be continuous and systematic, of a general business nature." *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra,* 40 P.3d at 1271. But "for specific jurisdiction to adjudicate claims arising from [a nonresident's] contacts with the forum state, the fair warning requirement is satisfied as long as the litigation results from alleged injuries that 'arise out of or relate to' activities that are significant and purposefully directed by the defendant at residents of the forum." *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra,* 40 P.3d at 1271 (quoting *Burger King Corp. v. Rudzewicz, supra* ).

■ When minimum contacts with the forum state have been established, the court must determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. The court should consider factors such as the burden on the nonresident, the forum state's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief. *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra; In re Parental Responsibilities of H.Z.G., supra.*

### C.   Trial Court's Resolution of Factual Disputes

■ AGD and Lukoil filed a motion pursuant to C.R.C.P. 12(b)(2) asserting lack of personal jurisdiction, and the trial court resolved certain factual disputes before determining the issue. Relying on *Leidy's, Inc. v. H2O Engineering, Inc.,* 811 P.2d 38 (Colo. 1991), Archangel contends the trial court was required to resolve all factual disputes in its favor and it erred in failing to do so. We disagree.

In *Leidy's,* the Colorado Supreme Court stated: "In ruling on a motion to dismiss for lack of personal jurisdiction, all factual disputes are resolved in the plaintiff's favor." *Leidy's, Inc. v. H2O Eng'g, Inc., supra,* 811 P.2d at 40. However, because the facts in *Leidy's* were "largely undisputed," the supreme court did not address the manner in which a trial court should resolve factual disputes if necessary to determine whether it may exercise personal jurisdiction. *Leidy's, Inc. v. H2O Eng'g, Inc., supra,* 811 P.2d at 39.

Similarly, the cases following *Leidy's* for this proposition have not involved challenges to the accuracy, rather than the sufficiency of a plaintiff's jurisdictional facts, and we have been unable to find any reported Colorado decision citing *Leidy's* that turned on conflicting evidence. *See New Frontier Media, Inc. v. Freeman,* 85 P.3d 611, 612 (Colo.App. 2003)(facts recited "[we]re not disputed"); *Martinez v. Farmington Motors, Inc.,* 931 P.2d 546 (Colo.App.1996)(discussing evidence submitted by plaintiff); *Ranger v. Fortune Ins. Co.,* 817 P.2d 600 (Colo.App.1991)(defendant did not contest jurisdictional allegations); *see also Panos Inv. Co. v. Dist. Court,* 662 P.2d 180 (Colo.1983)(citing same standard as *Leidy's,* but deciding on allegations in complaint alone).

However, cases involving challenges to subject matter jurisdiction provide guidance. Such challenges to subject matter jurisdiction are made through a C.R.C.P. 12(b)(1) motion to dismiss and come in two different forms—facial and factual attacks. As one authority has explained, in reviewing the federal rules:

A facial attack questions the sufficiency of the pleading. In reviewing a facial attack, a trial court accepts the allegations in the complaint as true. On the other hand, when a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.

On a facial challenge, the plaintiff enjoys safeguards similar to those provided in opposing a Rule 12(b)(6) motion. The court will accept the plaintiff's allegations as true, construing them most favorably to the plaintiff, and will not look beyond the face of the complaint to determine jurisdiction.

When the attack is factual, however, "the trial court may proceed as it never could under [Rule] 12(b)(6) or [Rule] 56." Because a factual Rule 12(b)(1) motion involves the court's "very power to hear the case," the court may weigh the evidence to confirm its jurisdiction. "No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts does not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

2 James W. Moore, *Moore's Federal Practice* § 12.30[4] (3d ed.2003)(footnotes and citations omitted); see *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 364 (1st Cir.2001)(rejecting argument that the facts should have been viewed in the light most favorable to plaintiff's position, and stating: "The motions to dismiss in this case plainly constitute factual challenges: they place in issue the accuracy, as opposed to the sufficiency, of the plaintiff's jurisdictional allegation."); *Patton v. Toshiba Am. Consumer Prods., Inc.*, 967 F.Supp. 283, 285–86 (M.D.Tenn.1997)("A court evaluating a facial attack [on subject matter jurisdiction] must consider the allegations of fact in the complaint to be true.... Alternatively, if a Rule 12(b)(1) motion contests subject matter jurisdiction factually, the court 'is free to weigh the evidence....' [And the court] 'has broad discretion to consider affidavits, documents outside the complaint, and to even conduct a limited evidentiary hearing if necessary.' ") (citations omitted).

In Colorado, factual disputes concerning subject matter jurisdiction under C.R.C.P. 12(b)(1) similarly have been resolved by the trial court at an evidentiary hearing. *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993).

In *Trinity*, the trial court entered summary judgment because the plaintiff failed to comply with jurisdictional prerequisites under the Governmental Immunity Act, § 24–10–101, et seq., C.R.S.2003. The supreme court reversed, concluding the issue concerned subject matter jurisdiction and had to be considered under C.R.C.P. 12(b)(1).

There, the parties submitted conflicting evidence regarding when the plaintiff discovered its injury and whether its notice was timely. The *Trinity* court concluded this disputed factual issue should be determined before trial by the court acting as fact finder. The supreme court looked at the federal rules, which are substantially similar to ours, and reasoned:

If the motion is a factual attack on the jurisdictional allegations of the complaint, such as the timeliness of the notice involved in this case, the trial court may receive any competent evidence pertaining to the motion. Fed.R.Civ.P. 12(b)(1) differs from Fed.R.Civ.P. 12(b)(6) (motion to dismiss for failure to state a claim) because *a trial court may consider evidence pursuant to Fed.R.Civ.P. 12(b)(1) without converting the motion to a summary judgment motion as it would be required to do if it considered matters outside the pleadings under a Fed.R.Civ.P. 12(b)(6) motion.* Under Fed.R.Civ.P. 12(b)(1):

*Any factual dispute upon which the existence of jurisdiction may turn is for the court alone, and not a jury to determine.* Appellate review of such a factual determination is on a clearly erroneous basis.

The "clearly erroneous" standard of appellate review under Fed.R.Civ.P. 12(b)(1) differs greatly from the standard of appellate review used if a Fed.R.Civ.P. 12(b)(6) motion is converted to a summary judgment motion under Fed.R.Civ.P. 56. The test for summary judgment is very stringent and gives every benefit of the inferences to the non-moving party.... By contrast, under Fed.R.Civ.P. 12(b)(1), the plaintiff has the burden to prove jurisdiction and the standard of appellate review is highly deferential. As the Third Circuit Court of Appeals stated: Under Rule 12(b)(1), the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." ... In contrast, because a Rule 12(b)(6) motion "results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn."

*Trinity Broad. of Denver, Inc. v. City of Westminster, supra*, 848 P.2d at 924–25 (emphases added, footnote and citations omitted)(quoting *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 74

(3d Cir.1991)); *see Valentin v. Hosp. Bella Vista, supra,* 254 F.3d at 363 (a defendant who controverts the accuracy of the plaintiff's jurisdictional facts should proffer "materials of evidentiary quality in support of that position").

We recognize that, here, defendants' motion to dismiss was based on a lack of personal jurisdiction under C.R.C.P. 12(b)(2), whereas in *Trinity,* the defendant's motion was based on lack of subject matter jurisdiction under C.R.C.P. 12(b)(1). However, where there is a factual challenge to personal jurisdiction, we conclude there are compelling reasons for applying the procedure approved in *Trinity* in determining the C.R.C.P. 12(b)(2) motion.

First, the trial court has discretion to allow discovery and to conduct an evidentiary hearing to decide motions to dismiss for lack of personal jurisdiction. *See Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra.* There would be no purpose in conducting such discovery if the court could not consider and weigh the facts gleaned from it.

Second, in other contexts, divisions of this court have cited *Trinity* in determining the extent to which the trial court should engage in fact finding. In *Werth v. Heritage International Holdings, PTO,* 70 P.3d 627, 629 (Colo.App.2003), a division of this court, relying on *Trinity,* held that when a court's subject matter jurisdiction was contested by means of a C.R.C.P. 12(b)(1) motion and there are material issues of fact, the trial court is required to hold an evidentiary hearing to resolve those issues. The division in *Werth* explained that "the trial courts of this state have rather consistently conducted evidentiary hearings to resolve material factual issues upon which their jurisdiction depends." *Werth v. Heritage Int'l Holdings, PTO, supra,* 70 P.3d at 628; *see Aztec Minerals Corp. v. State,* 987 P.2d 895, 898 (Colo. App.1999)("as to motions under subsections of C.R.C.P. 12(b) *other than* C.R.C.P. 12(b)(5)," trial court may consider evidence outside the pleadings without converting the motion into a summary judgment motion). *Compare Gadlin v. Metrex Research Corp.,* 76 P.3d 928 (Colo.App.2003)(remanding disputed matters under C.R.C.P. 15(c) relation back issue for determination at an evidentiary hearing, relying on *Trinity* ), *with*

*Schwindt v. Hershey Foods Corp.,* 81 P.3d 1144 (Colo.App.2003)(no hearing was required under *Trinity* because motion to dismiss was for failure to state a claim under C.R.C.P. 12(b)(5); thus, court could consider only matters within the four corners of the pleading and must accept allegations as true).

Third, unlike a dismissal under C.R.C.P. 12(b)(5) or a grant of summary judgment, which resolves the issues on the merits and is with prejudice, *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990), a dismissal for lack of subject matter or personal jurisdiction is not a decision on the merits. Hence, the plaintiff is free to file the lawsuit in another forum or under circumstances that would support jurisdiction. *Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 488 F.2d 75 (5th Cir.1973)(dismissal for lack of jurisdiction is not a dismissal on the merits that makes the action res judicata); *see* Fed.R.Civ.P. 41(b); C.R.C.P. 41(b).

In *Burden v. Greeven,* 953 P.2d 205 (Colo. App.1998), as here, the defendants moved to dismiss for lack of personal jurisdiction under C.R.C.P. 12(b)(2). A division of this court held that, unlike a motion for failure to state a claim under C.R.C.P. 12(b)(5), a C.R.C.P. 12(b)(2) motion "was not subject to conversion to a motion for summary judgment" and stated: "A motion to dismiss for lack of personal jurisdiction remains a motion to dismiss regardless of whether affidavits are considered, an evidentiary hearing is conducted, or other matters outside of the pleadings are considered." *Burden v. Greeven, supra,* 953 P.2d at 208. *But see Sender v. Powell,* 902 P.2d 947 (Colo.App.1995)(summary judgment affirmed where defendant moved to dismiss for lack of personal jurisdiction and attached evidence outside the pleadings).

Fourth, the issue of personal jurisdiction—like the issue of subject matter jurisdiction—is a legal determination, the resolution of which requires the balancing of numerous factors. The court must determine whether it has the power over the defendant to hear the dispute. Because that determination cannot be made by a jury, there is no reason

to delay the resolution of this issue because of conflicting evidence.

Arguably, the prompt resolution of the personal jurisdiction issue is even more important than the resolution of subject matter jurisdiction because subject matter jurisdiction can be raised at any time, even after judgment. *See Mesa County Valley Sch. Dist. No. 51 v. Kelsey,* 8 P.3d 1200 (Colo. 2000); *Hoyman v. Coffin,* 976 P.2d 311 (Colo. App.1998). Personal jurisdiction, however, may be waived if the defendant participates in litigation of the merits, even though the defendant raises the defense in the answer. If the issue of personal jurisdiction is not resolved early in the proceedings, a nonresident defendant is at a significant disadvantage in determining how to proceed in the action while preserving the issue for appeal. *See Hamilton v. Atlas Turner, Inc.,* 197 F.3d 58, 61 (2d Cir.1999)(defendant "forfeited" personal jurisdiction defense by participating in extensive pretrial proceedings, such as discovery and settlement conferences, even though issue was raised in its answer); *Cont'l Bank v. Meyer,* 10 F.3d 1293, 1296 (7th Cir.1993)(defendants waived their objection to personal jurisdiction by participating in the merits of the lawsuit, "although [they] pled lack of jurisdiction in their answer"); *T.L. Smith Co. v. Dist. Court,* 163 Colo. 444, 431 P.2d 454 (1967)(defendant waived objection to personal jurisdiction by filing a permissive counterclaim seeking damages for plaintiff's breach of contract).

Where there are factual issues in dispute relevant to personal jurisdiction, we perceive no reason why the trial court should not resolve those issues in the manner prescribed in *Trinity.* As Professor Moore has explained, "In making its determination with respect to the existence of personal jurisdiction, the court has discretion to rely on written submissions or to hold a full evidentiary hearing. . . . If the court holds an evidentiary hearing . . . the party asserting jurisdiction must demonstrate its existence by a preponderance of the evidence." 2 Moore, *supra,* § 12.31[3].

Professor Moore also discusses the standard of review in cases challenging personal jurisdiction:

> With undisputed facts, a district court's determination that it has personal jurisdiction over a nonresident defendant becomes a question of law, reviewable de novo.

> If facts going to personal jurisdiction are disputed, the normal "clearly erroneous" standard applies to review of the district court's application of the law to those facts.

2 Moore, *supra,* § 12.31[6].

We therefore conclude the *Trinity* analysis, which requires that the trial court resolve disputed factual issues involving subject matter jurisdiction under C.R.C.P. 12(b)(1), should apply to motions to dismiss for lack of personal jurisdiction under C.R.C.P. 12(b)(2). Applying that analysis, whether a court may properly assert personal jurisdiction over a party is a question of law that we review de novo. *Union Pac. R.R. v. Equitas Ltd.,* 987 P.2d 954 (Colo. App.1999). But we review the trial court's determination of factual issues under a clearly erroneous standard. *Trinity Broad. of Denver, Inc. v. City of Westminster, supra; see Dainippon Screen Mfg. Co. v. CFMT, Inc.,* 142 F.3d 1266, 1269 (Fed.Cir.1998).

Accordingly, where, as here, there is a factual challenge to personal jurisdiction—that is, the defendants have controverted the accuracy rather than the sufficiency of the jurisdictional facts asserted by the plaintiff and have proffered materials of evidentiary quality in support of their position—we conclude the trial court did not err in weighing the conflicting evidence and in resolving the legal issues regarding such jurisdiction. We therefore reject Archangel's contentions that the trial court erred in doing so and that reversal is required on that basis.

### D. AGD's Business Activities in Colorado

We also reject Archangel's contention that AGD purposefully availed itself of the privilege of conducting business activities within Colorado and that the trial court erred in ruling otherwise.

Archangel alleged in its complaint, inter alia, that AGD directed numerous communications into the state, "including letters, telefaxes, and telephone calls related to the Agreement and the 1999 Agreement . . . [which] were designed to perpetrate [an illegal scheme]."

Archangel relies heavily on AGD's transmission of communications into Colorado between March 1998 and April 2000, which consisted of telephone calls and letters directed to Archangel's chief executive officer or to others and copied to him. The letters included general business declarations, draft press releases, and letters concerning the license dispute. The CEO's notes of telephone communications with AGD agents documented five conversations between June 1999 and April 2000.

However, AGD submitted evidence that it has conducted no business in Colorado or elsewhere in the United States; it owns no property, interests, or assets in Colorado or elsewhere in the United States; it has no bank accounts, conducts no financial transactions, solicits no business, and ships no products to the United States; it performs all its production and sales activities in Russia; and all its employees live and work in Russia.

Based on the submissions, the trial court found that AGD does not own or use real property or conduct business in Colorado; Archangel was not a resident of Colorado at the time the relevant agreements were executed; the contracts at issue were negotiated, were executed, and required performance in Russia by non-Colorado corporations; and Archangel unilaterally decided to move its principal place of business to Colorado after the contractual relationship was established. The court thus determined that AGD did not purposefully avail itself of the privilege of conducting activities within Colorado or invoke the benefits and protections of its laws.

Archangel contends the trial court erred in finding it was not a resident of Colorado when the contracts were executed. However, because our analysis relies primarily upon defendant's contacts with and activity in Colorado and because the trial court's remaining findings and conclusions are supported by the record, its finding regarding Archangel's residency—even if inaccurate—does not require reversal.

We therefore conclude the trial court did not err in determining AGD did not purposefully avail itself of the privilege of conducting business activities within Colorado.

Contrary to Archangel's contention, *Marquest Medical Products, Inc. v. Daniel, McKee & Co.*, 791 P.2d 14 (Colo.App.1990), does not require a different result. There, the plaintiff alleged that the defendant, a nonresident corporation, made numerous misrepresentations that induced the plaintiff to enter into a credit agreement and, as a result, the plaintiff sustained economic injury. A division of this court concluded the nonresident defendant had sufficient business contacts to support jurisdiction based on seven face-to-face meetings in two states, one mailing, and twenty-eight phone calls over a four-month period.

AGD's communications with Archangel were far more sporadic, and all its contacts related to the agreements that had no connection to Colorado. Hence, *Marquest* is distinguishable. *See Waterval v. Dist. Court*, 620 P.2d 5, 9 (Colo.1980)(discussing difficulty of facts that do not "neatly fit into either the 'single contact' or 'continuous contact' category" where nonresident's contacts with state extended over two years, but were less than continuous); *New Frontier Media, Inc. v. Freeman*, supra (where all other operative acts occurred out of state, two letters sent from nonresident defendant's agent to Colorado were insufficient to establish minimum contacts); *cf. In re Parental Responsibilities of H.Z.G.*, supra (father purposefully availed himself of benefits of state by sending letter to help mother obtain public assistance).

Relying on *Von Palffy–Erdoed v. Bugescu*, 708 P.2d 816 (Colo.App.1985), Archangel next argues that even though the contract was not executed in Colorado, Archangel and AGD continued their contractual relationship after Archangel moved here, and that such "continue[d] performance" was sufficient to establish personal jurisdiction over AGD. We disagree.

In *Von Palffy–Erdoed*, supra, 708 P.2d at 818, a division of this court held personal jurisdiction over the defendant was proper, explaining that "although defendant did not consent in writing to plaintiff's move to Colorado, following such move, he freely and deliberately chose to continue their contractual relationship."

*Von Palffy–Erdoed* is distinguishable because the plaintiff there negotiated and exe-

cuted a contract to purchase the defendant's car in California. The plaintiff then moved to Colorado, continued payments to the defendant, corresponded with the defendant about payments, incurred substantial repair expenses for the car, and discovered the car had previously been in an accident, contrary to assurances made by the defendant. The defendant later repossessed the car in Colorado through an agent. A division of this court concluded the defendant's conduct satisfied the minimum contacts requirement because the repossession in Colorado and the injury incurred gave rise to the plaintiff's claims.

Those circumstances do not exist in this case, and we conclude, as did the trial court, that AGD's continuing contractual relationship with Archangel was insufficient to allow personal jurisdiction over it in Colorado.

### E. AGD's Tortious Activity

■ Archangel next contends the trial court erred in failing to consider AGD's allegedly tortious acts. Again, we disagree.

We first reject Archangel's contention that AGD's intent to cause injury in Colorado supports a finding of personal jurisdiction.

Archangel alleged in its complaint that AGD committed fraud by directing numerous written and verbal statements to Colorado between August 1997 and August 2000; confirming its compliance and intention to comply with the 1993 agreement thereby; inducing Archangel to enter into the 1999 agreement with no present intention to fulfill its promise; acting in a willful and wanton manner; and causing injury to Archangel in Colorado. Archangel further alleged that AGD had a fiduciary duty arising from the agreements, which AGD breached when it failed to transfer its rights under the license. According to Archangel, this conduct caused injury to Archangel while it was in Colorado. In addition, Archangel alleged a civil conspiracy based on AGD's acts outside of Colorado.

Contrary to Archangel's contention, *D & D Fuller CATV Construction, Inc. v. Pace, supra,* does not require a finding of jurisdiction here. There, the nonresident defendants were the paternal grandparents of a child who lived with the plaintiff mother in Colorado pursuant to a custody order issued in Colorado. After the child was kidnapped from Colorado by his father, the mother filed an action against the grandparents for intentional interference with the parent-child relationship, alleging they aided and abetted the kidnapping and had physical custody of the child. The supreme court concluded the mother established a prima facie showing of personal jurisdiction over the grandparents, explaining that, "for purposes of the long-arm statute, tortious conduct in a foreign state which causes injury in Colorado may be deemed to be an act committed in Colorado so as to satisfy the long-arm statute." *D & D Fuller, supra,* 780 P.2d at 524.

Here, Archangel's allegation of AGD's tortious conduct may satisfy the requirement that there be the "commission of a tortious act within this state" under the long-arm statute. *See* § 13–1–124(1)(b). However, we do not interpret *D & D Fuller* to require a finding of sufficient contacts whenever an intentional tort is alleged.

The court in *D & D Fuller* also concluded the nonresident grandparents had sufficient contacts with Colorado such that exercising personal jurisdiction over them was reasonable, including (1) a letter to the Colorado Department of Vital Statistics requesting a duplicate copy of the child's birth certificate; (2) an attempted transfer of the father's Colorado vehicle title; (3) telephone calls to the mother; (4) negotiation of paychecks from the father's Colorado employer; and (5) other assistance to the father in abducting the child and preventing his return to the mother. Thus, the nonresident grandparents in *D & D Fuller* had considerably more contact with Colorado than AGD had here.

Further, in *D & D Fuller,* the court adopted the rule established in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder,* the California plaintiff sued two Florida residents in a California court for libel and other privacy torts. The plaintiff alleged the defendants wrote and edited a libelous article that concerned the California activities of a California resident, drew from California sources, impugned the professionalism of an entertainer whose television career was centered in California, and caused the plaintiff injury in Cali-

fornia. The United States Supreme Court concluded that California was "the focal point both of the story and of the harm suffered" and that jurisdiction over the nonresidents was proper there based on the "effects" of their Florida conduct in California. *Calder v. Jones, supra,* 465 U.S. at 788–89, 104 S.Ct. at 1486–87.

In *D & D Fuller, supra,* 780 P.2d at 525–26 (citations omitted), the supreme court explained the "effects" test set out in *Calder:*

> The United States Supreme Court [in *Calder* ] has addressed the issue of what contacts are necessary to satisfy due process in the context of an intentional tort. [T]he Court approved an "effects" test and held that where a defendant's intentional, and allegedly tortious, actions, taken outside the forum, are expressly directed at causing a harmful effect within the forum state, a sufficient nexus exists between the defendant and the state so as to satisfy due process. [Thus], the [nonresident] defendant should reasonably anticipate being haled into court to answer for his intentionally tortious actions.

*Calder* and *D & D Fuller* are distinguishable from the circumstances here because AGD's alleged tortious activity was not attended by other contacts with the forum state. In other words, Colorado was not "the focal point both of the story and of the harm suffered." *Calder v. Jones, supra,* 465 U.S. at 789, 104 S.Ct. at 1486; *see Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 474, 105 S.Ct. at 2183 ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."); *Keefe v. Kirschenbaum & Kirschenbaum, P.C., supra* (quoting same language); *see also Wallace v. Herron,* 778 F.2d 391, 394 (7th Cir.1985)("We do not believe that the Supreme Court, in *Calder,* was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff."); *Santa Fe Techs., Inc. v. Argus Networks, Inc.,* 131 N.M. 772, 42 P.3d 1221, 1230 (N.M.Ct.App.2001)(declining to apply *Calder* and reasoning, "An intentional tort without minimum contacts does not comport with due process.").

We therefore conclude AGD's alleged tortious acts, without other contacts with Colorado, do not support a reasonable inference that it engaged in conduct subjecting it to personal jurisdiction here. Accordingly, the trial court's failure, if any, to consider these alleged tortious acts did not affect the result.

Given our conclusion, we also need not address the propriety of the trial court's reliance on the economic loss rule.

### F. Lukoil's Tortious Acts and Business Activities in Colorado

In view of our conclusion that AGD's alleged contacts do not establish personal jurisdiction over it in Colorado, we necessarily reject Archangel's related contention that AGD's alleged tortious acts are attributable to Lukoil in establishing minimum contacts.

We also reject Archangel's contention that Lukoil purposefully availed itself of the privilege of conducting business activities within Colorado. As relevant here, Archangel alleged in its complaint that Lukoil (1) is a public corporation "organized and existing under the laws of the Russian Federation and maintains its principal place of business in the Russian Federation"; (2) directly or indirectly managed and controlled AGD during relevant periods and directed AGD to send fraudulent communications into Colorado; and (3) conducts business in Colorado by operating at least one gas station, communicating directly with Archangel, and directing AGD to receive communications from Colorado.

In support of its motion to dismiss, Lukoil's Russian counsel submitted an affidavit stating that Lukoil is not and has never been registered to do business as a foreign corporation in Colorado and that it did not acquire a controlling interest in AGD until 2001. Another of Lukoil's attorneys submitted an affidavit stating that Lukoil has no contracts with Archangel or any entity located in Colorado; is not conducting business with any person in Colorado; does not have any offices, employees, agents, or business interests in Colorado; does not hold meetings, own property, or do business in Colorado; and has not purposefully directed any activity here. Lukoil also submitted the affidavit

of the owner and operator of the gas station, which stated Lukoil never had any ownership interest in it, and documentation of the current ownership.

Archangel responded with the affidavit of its chief executive officer, which stated that AGD acted "in concert with Lukoil." Archangel also submitted photographs of the gas station with "Lukoil" printed on the sign and a 1998 press release stating, "Today there are six stations in Colorado, Virginia, [Maine], and some other states."

Based on these submissions, the trial court found that (1) Lukoil was not a resident Colorado company; (2) it had refuted the existence of alleged business contacts in Colorado; (3) it did "nothing in connection with the agreements at issue here to have invoked the benefits and protections of this state such that this court should exercise specific jurisdiction"; (4) Lukoil did "nothing such that it should reasonably have anticipated being called into court in Colorado"; and (5) exercising jurisdiction over Lukoil would offend notions of fair play and substantial justice.

The trial court thus determined Lukoil was not subject to personal jurisdiction in Colorado. We agree.

Accordingly, we conclude the court did not err in granting the motion to dismiss filed by AGD and Lukoil based on the lack of personal jurisdiction over them.

### III. Forum Non Conveniens

 Once the trial court determined it lacked personal jurisdiction over AGD and Lukoil, the court should not have proceeded to consider the issue of forum non conveniens. Accordingly, we do not address that issue, nor do we need to address Archangel's remaining contentions.

### IV. Cross–Appeal

In its cross-appeal, AGD urges affirmance of the judgment on grounds other than those relied upon by the trial court. However, seeking affirmance of the judgment on other grounds is not a proper basis for a cross-appeal.

Generally, an appellee must file a cross-appeal before an appellate court can consider an alleged error of the trial court which prejudiced the appellee. But an appellee "may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it." *Blocker Exploration v. Frontier Exploration, Inc.,* 740 P.2d 983, 989 (Colo.1987)(quoting *United States v. American Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924)). Accordingly, we do not address the contentions made by AGD in its cross-appeal.

The order dismissing the action and the judgment entered in favor of defendants are affirmed.

Judge NIETO and Judge PICCONE concur.