24CA1967 Leventhal v Jensen 10-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1967
El Paso County District Court No. 23CV32027
Honorable Eric Bentley, Judge

---

Leventhal Lewis Kuhn Taylor Swan P.C.,

Plaintiff-Appellee,

v.

Kristoffer Odin Jensen and Amanda Michelle Lancaster,

Defendants-Appellants.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE BROWN
Fox and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

---

Lahti Helfgott LLC, Jonathan A. Helfgott, Denver, Colorado, for Plaintiff-Appellee

Springer and Steinberg, P.C., Jeffrey A. Springer, Joel A. Richardson, Denver, Colorado, for Defendants-Appellants

¶ 1     Defendants, Kristoffer Odin Jensen and Amanda Michelle Lancaster, appeal the district court's order entering judgment in favor of plaintiff, Leventhal Lewis Kuhn Taylor Swan P.C. (the firm). Defendants contend that the court erred by (1) denying their motion to dismiss for lack of personal jurisdiction; (2) entering default against them; (3) denying their motion to set aside default; (4) denying their request to testify remotely; and (5) awarding the firm all requested damages, including treble damages.  We affirm.

## I. Background

¶ 2     The firm is a Colorado-based law firm.  Defendants are attorneys who reside in Alaska.  In early 2023, defendants agreed to open a branch office of the firm in Anchorage, Alaska, but the parties' relationship deteriorated quickly.  By August, defendants decided to terminate their affiliation with the firm.  In October, the firm sued defendants in Colorado for civil theft, conversion, unjust enrichment, constructive fraud, civil conspiracy, violation of the Colorado Organized Crime Control Act (COCCA), breach of duty of loyalty, misappropriation of business advantage, breach of contract, declaratory relief, and accounting.

¶ 3 More than three weeks beyond their deadline to respond to the complaint, and after the firm first moved for entry of clerk's default, defendants filed a C.R.C.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction. The district court denied the firm's request for entry of default as moot and considered the defendants' untimely motion but nevertheless denied it on February 1, 2024. When defendants failed to timely file an answer following the court's order, the firm again moved for entry of default. The court granted the motion on March 20.

¶ 4 On April 1, forty-six days late, Lancaster filed an untimely answer that substantively stated, in its entirety: "(1) - (11) Denial of all [c]laims and damages." The firm moved for entry of default judgment and requested a hearing on damages. Lancaster filed a motion to set aside entry of default. The court denied the motion and set a damages hearing. At that hearing, the court ruled orally and awarded the firm damages, including treble damages, totaling $379,711.47. The court incorporated its oral ruling into a written judgment entered the same day.

## II. Personal Jurisdiction

¶ 5     Defendants contend that the district court erred by denying their C.R.C.P. 12(b)(2) motion to dismiss and exercising personal jurisdiction over them.  We disagree.

### A. Standard of Review

¶ 6     We review de novo whether a trial court has personal jurisdiction over a party.  *Giduck v. Niblett*, 2014 COA 86, ¶ 11.  We also review de novo a court's ruling without a hearing on a C.R.C.P. 12(b)(2) motion to dismiss.  *Align Corp. Ltd. v. Boustred*, 2017 CO 103, ¶ 8.

¶ 7     When a court decides a C.R.C.P. 12(b)(2) motion on the documentary evidence alone, the plaintiff need only make a prima facie showing of personal jurisdiction.  *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1192 (Colo. 2005).  That burden is satisfied when "the plaintiff raises a reasonable inference that the court has jurisdiction over the defendant."  *Id.*  "The purpose of the light prima facie burden of proof at this early stage of litigation is simply to screen out 'cases in which personal jurisdiction is obviously lacking, and those in which the jurisdictional challenge is patently

bogus.'" *Id.* (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995)).

¶ 8    In resolving the motion, the court must accept as true the allegations in the complaint and the affidavits or other evidence submitted by the plaintiff unless contradicted by competent evidence submitted by the defendant. *Goettman v. N. Fork Valley Rest.*, 176 P.3d 60, 66 (Colo. 2007). If the parties submit conflicting competent evidence, any discrepancies must be resolved in favor of exercising jurisdiction. *Id.*

B.    Law Governing Personal Jurisdiction

¶ 9    "For a Colorado court to exercise jurisdiction over a non-resident defendant, the court must comply with Colorado's long-arm statute and constitutional due process." *Align Corp. Ltd.*, ¶ 9; *see also* § 13-1-124, C.R.S. 2025. Colorado's long-arm statute extends the state's jurisdiction to the maximum limit permitted by the Due Process Clauses of the United States and Colorado Constitutions. *Goettman*, 176 P.3d at 67. Thus, if the constitutional requirements are satisfied, the long-arm statute is also satisfied. *Found. for Knowledge in Dev. v. Interactive Design Consultants, LLC*, 234 P.3d 673, 677 (Colo. 2010).

4

¶ 10    Due process requires that a defendant have "certain minimum contacts with the forum state so that he may foresee being answerable in court there." *Archangel*, 123 P.3d at 1194. The quantity and quality of the contacts required for a court to exercise personal jurisdiction depends on whether a plaintiff alleges general or specific jurisdiction. *Goettman*, 176 P.3d at 67. Here, the firm alleged specific jurisdiction. To assess whether a nonresident defendant has sufficient minimum contacts to justify the exercise of specific personal jurisdiction, a court must assess whether (1) the defendant "'purposefully directed' its activities at residents of the forum state," and (2) "the plaintiff's injuries . . . 'arise out of or relate to' the defendant's forum-related activities." *State ex rel. Weiser v. JUUL Labs, Inc.*, 2022 CO 46, ¶ 37 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

¶ 11    Once a court is satisfied that a defendant has the requisite minimum contacts with the forum state, these contacts must be separately analyzed "to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Archangel*, 123 P.3d at 1195 (quoting *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1271 (Colo. 2002)). Factors a

court examines include "the burden on the defendant, the forum state's interest in resolving the controversy, and the plaintiff's interest in attaining effective and convenient relief." *Id.* Ultimately, the inquiry turns on whether the exercise of personal jurisdiction is reasonable under the circumstances surrounding the case. *Id.*

### C. Additional Background

¶ 12 In its complaint, the firm asserted contract and tort-based claims against defendants. It alleged that the district court had personal jurisdiction over defendants because they transacted business within Colorado and committed tortious acts expressly aimed at Colorado with the knowledge that those acts would cause injuries in the state. In opposing defendants' motion to dismiss, the firm submitted a declaration from shareholder Michael D. Kuhn. Collectively, the complaint and declaration alleged the following relevant facts, which we presume are true for purposes of analyzing personal jurisdiction.

¶ 13 In early 2023, Jensen initiated discussions with a firm shareholder about joining the firm because he and Lancaster were planning to leave their employment. The parties had a series of discussions by phone and email exploring the prospect of

6

defendants opening an Anchorage office for the firm. In March, defendants came to Colorado and had lengthy meetings spanning two days to negotiate the terms that would govern their business relationship. Although defendants prepared and submitted a proposed term sheet while they were in Colorado, they did not sign a contract at that time. The parties eventually opened a branch office in Anchorage.

¶ 14 The firm "incurred extraordinary costs and obligations to bring the firm's Anchorage office into fruition." The firm and defendants jointly signed a commercial lease for office space in Anchorage. Defendants used the firm's money to buy furniture, appliances, artwork, technology, marketing services, and web design. And the firm purchased a premier sponsorship to increase its visibility in the region.

¶ 15 The firm maintained a JPMorgan Chase Bank account through the Colorado Springs branch. Because Chase Bank did not have a branch in Alaska, however, the firm set up a KeyBank account there to deposit unearned funds for its Alaskan clients and to transfer money to the Chase Bank account. Defendants made "thousands of dollars in cash withdrawals" from the KeyBank

7

account that "have not been justified." The firm also gave defendants credit cards linked to the Chase Bank account, and defendants "made numerous charges on these cards, including certain unauthorized and unreimbursed charges." Defendants sent client invoices through the firm's billing system, and when clients paid those invoices, funds were deposited into the firm's Chase Bank account. The firm also paid defendants' income by electronic transfer or check from the Chase Bank account in Colorado.

¶ 16 Within a few months, it became clear to the firm that defendants' "[p]rofligate spending, lack of legal experience, subpar work, poor organization, and untrained administrative skills were inconsistent with the [f]irm's reputation." In August, defendants decided to terminate their relationship with the firm and announced they would be opening their own firm. The firm sent defendants a written summary of terms and conditions for closing the Anchorage office, which noted that their affiliation would end by September 4. Defendants did not substantively respond.

¶ 17 After the firm sent the closing letter, defendants' billings "fell dramatically" because they were "slow billing" clients to avoid paying commissions to the firm. "Lancaster made hundreds of

8

dollars of personal purchases with [f]irm assets," and defendants spent firm assets "to acquire supplies for their new business venture." Defendants "misappropriated funds" owed to the firm under a municipal contract in Alaska. Then, in September, Jensen "illegally withdrew over $10,000 *in cash* from [the firm's] KeyBank operating account . . . with the express approval of, if not an outright request by" Lancaster.

¶ 18 Defendants filed a C.R.C.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction. Although defendants disputed many of the facts the firm alleged in the complaint, they did not verify the motion or submit affidavits or other competent evidence to contradict those facts.

### D. Minimum Contacts

¶ 19 The firm sufficiently alleged that defendants "purposefully availed [themselves] of the privilege of conducting business in the forum state," *Found. for Knowledge in Dev.*, 234 P.3d at 678 (quoting *Archangel*, 123 P.3d at 1194), by pursuing a relationship with a firm they knew was based in Colorado, negotiating the terms of the business relationship in Colorado, communicating with the firm through emails and calls, representing clients who made

9

payments to the firm in Colorado, and maintaining a business relationship with the firm for several months. Defendants' actions, when considered in the aggregate, make a prima facie showing that defendants purposefully directed their business activities at Colorado. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) (a defendant purposefully directed its activities at Colorado when the contract was entered into with a Colorado resident, defendant would have been required to make payments in Colorado, defendant sent representatives to Colorado to conduct due diligence, and defendant sent significant correspondence to plaintiff in Colorado); *see also Found. for Knowledge in Dev.*, 234 P.3d at 679 (a defendant purposefully directed his activities at Colorado when he contracted with a Colorado public charity, he traveled to Colorado numerous times, he communicated by email and telephone with the business, the plaintiff signed the agreement in Colorado, and the program was developed in Colorado); *cf. New Frontier Media, Inc. v. Freeman*, 85 P.3d 611, 614-15 (Colo. App. 2003) (defendants did not have sufficient contacts with Colorado when they did not enter Colorado, plaintiff initiated the transaction out of state, due diligence was conducted out of state, the assets to

be purchased were out of state, the letter of interest was signed out of state, and no activities were required in Colorado).

¶ 20    The firm also sufficiently alleged that defendants intentionally committed tortious acts directed at Colorado knowing that the brunt of the injury would be felt in Colorado, *see JUUL Labs*, ¶ 40, by illegally withdrawing $10,000 in cash from an account owned by the Colorado-based firm, misappropriating funds from a municipal contract due to the firm, undermining the firm's billing, retaining funds they were obligated to pay the firm, and using credit cards connected to a Colorado bank account for unauthorized purchases. *See Found. for Knowledge in Dev.*, 234 P.3d at 681 (a defendant's tortious conduct was purposefully directed at Colorado when he knew he was negotiating with a corporation headquartered in Colorado, he understood those communications would be received in Colorado, and the corporation suffered the injury in Colorado).

¶ 21    Citing *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1076 (10th Cir. 1995), defendants argue that withdrawing money from the KeyBank account in Alaska was insufficient to establish that they purposefully directed their actions at Colorado.  Defendants similarly point to *Wenz v. Memery Crystal*, 55 F.3d 1503, 1507-08

11

(10th Cir. 1995), in which a plaintiff alleged that defendants in London, England, illegally disbursed his money after he sent that money to London. But unlike *Far West Capital* and *Wenz*, defendants' withdrawal of money in Alaska was not the only allegation supporting the tort claims. Defendants also slow billed clients, retained funds due to the firm, and used credit cards linked to the firm's Colorado account. When defendants' conduct is viewed in the aggregate, it satisfies the firm's burden to make a prima facie showing of minimum contacts. *See Found. for Knowledge in Dev.*, 234 P.3d at 681.

¶ 22    Finally, it is undisputed that the business relationship between the parties and defendants' tortious conduct gave rise to the litigation. *See JUUL Labs*, ¶ 35. Accordingly, we conclude that the firm made a prima facie showing that defendants had sufficient minimum contacts to justify the district court's exercise of personal jurisdiction. *Id.*

### E.    Reasonableness

¶ 23    In their opening brief, defendants contend that the district court's exercise of jurisdiction over them was unreasonable because they were "severely prejudiced by being forced to litigate in

Colorado . . . in the absence of any countervailing considerations."

They do not explain the claimed prejudice or how that prejudice

outweighed any countervailing considerations. They only

generically cite *International Shoe Co. v. Washington*, 326 U.S. 310,

316 (1945). And we reject their attempt to expand upon this

argument in their reply brief. *See In re Marriage of Dean*, 2017 COA

51, ¶ 31 (declining to consider arguments made in a reply brief that

expanded upon contentions raised in an opening brief). Because

defendants failed to develop this argument, we do not consider it

further. *See S. Colo. Orthopaedic Clinic Sports Med. & Arthritis

Surgeons, P.C. v. Weinstein*, 2014 COA 171, ¶ 35 (declining to

address conclusory argument presented without authority); *Barnett

v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010)

(Appellate courts "will not consider a bald legal proposition

presented without argument or development.").

¶ 24     We conclude that the district court did not err by denying defendants' C.R.C.P. 12(b)(2) motion to dismiss and exercising specific personal jurisdiction over defendants.[1]

### III.     Setting Aside the Entry of Default

¶ 25     Defendants contend that the district court erroneously denied their motion to set aside default[2] by (1) concluding that defendants failed to demonstrate good cause; (2) entering default as a sanction; (3) denying any relief as to Jensen; and (4) "disregarding"

---

[1] To the extent defendants contend that the district court should have held a hearing on their C.R.C.P. 12(b)(2) motion, we reject that contention. First, defendants never requested a hearing and thus waived that argument. *See In re Estate of Ashworth*, 2024 CO 39, ¶ 20 n.3. Second, they offered no evidence, competent or otherwise, that conflicted with the facts the firm alleged to support the exercise of personal jurisdiction, so the court was not required to hold a hearing. *See Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (an evidentiary hearing is only necessary "when the proffered evidence is conflicting and the record is rife with contradictions, or when a plaintiff's affidavits are patently incredible" (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995))).

[2] The motion also sought to set aside default judgment and damages, but the district court had not yet entered default judgment or awarded damages.

Lancaster's argument that she was protected by the Servicemembers Civil Relief Act (SCRA).[3]  We perceive no error.

### A.    Generally Applicable Law and Standard of Review

¶ 26    Default judgment occurs in two steps: (1) entry of default by the clerk and (2) entry of default judgment by the court.  *Ferraro v. Frias Drywall, LLC*, 2019 COA 123, ¶ 11; C.R.C.P. 55(a).  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default."  C.R.C.P. 55(a).  An entry of default "accepts the complaint's allegations and establishes the defendant's liability, but it does not establish damages."  *Ferraro*, ¶ 11.  After the entry of default, the court then determines damages and enters a default judgment.  *Id.* at ¶ 12.

---

[3] Defendants also contend that the district court erred by failing to provide them an opportunity to respond to the firm's motion under C.R.C.P. 121, section 1-15, and by entering default when they had otherwise appeared under C.R.C.P. 55(a) by filing a motion to dismiss.  We decline to address these arguments because defendants did not make them to the district court.  *See Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 ("In civil cases, arguments never presented to, considered by, or ruled upon by a district court may not be raised for the first time on appeal.").

¶ 27    Under C.R.C.P. 55(c), a court may set aside entry of default "[f]or good cause shown." When considering whether a defaulting party has demonstrated good cause, a trial court should consider whether (1) the neglect that resulted in entry of default was excusable; (2) the moving party alleged a meritorious claim or defense; and (3) relief from the challenged order would be consistent with considerations of equity. *Buckmiller v. Safeway Stores, Inc.*, 727 P.2d 1112, 1116 (Colo. 1986); *see also Singh v. Mortensun*, 30 P.3d 853, 855 (Colo. App. 2001) (the factors to be considered in setting aside the entry of default are substantially the same as the factors to be considering in setting aside a default judgment (citing *Buckmiller*, 727 P.2d at 1116)). These factors are to be "flexibly applied and liberally interpreted." *Singh*, 30 P.3d at 855.

¶ 28    For the first factor, a party's conduct must show more than "[c]ommon carelessness and negligence." *Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 319 (Colo. 2010). The circumstances surrounding the neglect should involve "unforeseen circumstances which would cause a reasonably prudent person to overlook a required act in the performance of some responsibility." *Id.* (citation omitted). To satisfy the second factor, a party must

16

support the asserted meritorious defense with factual allegations, not just legal conclusions. *Id.* For the third factor, a court should consider the promptness of the motion, any detrimental reliance by the opposing party on the entry of default, the prejudice to the opposing party if the motion were to be granted, and the prejudice to the moving party if the motion were to be denied. *Id.*

¶ 29 We review a court's interpretation of the rules of civil procedure de novo. *Home Improvement, Inc. v. Villar*, 2022 COA 129, ¶ 12. But we review a trial court's decision to grant or deny a motion to set aside a clerk's entry of default for an abuse of discretion. *Ferraro*, ¶ 10. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Id.* Whether to set aside an entry of default "is at its core an equitable decision." *Goodman*, 222 P.3d at 319. The court must consider and weigh each factor, but a failure to satisfy any one factor may result in the denial of a motion to set aside the entry of default. *Id.* at 320.

### B. The District Court Properly Entered Default

¶ 30 As an initial matter, to the extent that defendants contend the district court's entry of default was improper, we disagree.

¶ 31    A defendant initially has thirty-five days to file an answer or otherwise respond after service of a summons and complaint outside of Colorado.  C.R.C.P. 12(a)(2).[4]  But once the district court denies a C.R.C.P. 12 motion, "the responsive pleadings shall be filed within [fourteen] days after notice of the court's action."  C.R.C.P. 12(a)(1)(A).

¶ 32    Defendants were served with the court's order denying their C.R.C.P. 12(b)(2) motion to dismiss on February 1, 2024.  *See* C.R.C.P. 5(b)(2)(B) ("Service by mail is complete on mailing[.]").  Consequently, defendants' deadline to file an answer was February 15.[5]  Lancaster filed a one-line answer on April 1.  Although the answer was purportedly filed on behalf of "Kris Kensen [sic] and Amanda Lancaster," Jensen did not sign it.  Thus, Jensen never filed an answer.  *See* C.R.C.P. 11(a) ("A party who is not represented

---

[4] Defendants do not contest that they were properly and personally served with the summons and complaint.  *See* C.R.C.P. 4.
[5] Defendants assert that they did not receive the district court's order denying their motion until February 23.  Even assuming that date triggered the deadline to respond — and it does not — defendants' deadline to answer would have been March 8.

by an attorney shall sign his pleadings and state his address.").[6] Because defendants failed to file a timely answer, the district court properly entered default. *See* C.R.C.P. 12(a)(1)(A); C.R.C.P. 55(a).

### C. Good Cause

¶ 33 Defendants contend the district court abused its discretion by concluding that defendants failed to demonstrate good cause for setting aside the entry of default. We are not persuaded.

#### 1. Excusable Neglect

¶ 34 Defendants contend that their neglect in failing to timely file an answer was excusable because (1) they were not properly served at their last known address; (2) delays in the mail hindered their ability to timely answer; and (3) they believed they had thirty-five days to file their answer. None of these reasons demonstrates excusable neglect.

##### a. Last Known Address

¶ 35 Defendants first contend that they were not served the district court's order denying their motion to dismiss at their "last known

---

[6] Although defendants are lawyers, they initially appeared in the case as unrepresented parties, were briefly represented by counsel from June 25 to July 25, 2024, and then were unrepresented throughout the remaining proceedings.

address" as required by C.R.C.P. 5(b)(2), rendering service invalid and ineffective to trigger their deadline to answer.[7]  Citing no authority, defendants argue that the "last known address" is the address listed on a party's pleading, and the only address that was ever listed on defendants' pleadings was their business address.

¶ 36    The Colorado Rules of Civil Procedure do not define "last known address," but a division of this court looked to dictionary definitions of the words to define the phrase for purposes of C.R.C.P. 4(g).  *Villar*, ¶¶ 16-17; *see also Hiner v. Johnson*, 2012 COA 164, ¶ 13 (we interpret rules of procedure by affording the words their plain and ordinary meaning).  Ultimately, the division defined "address" as "the place at which a party generally recognizes that another party can be communicated with" and "last known address" as "the most recent such place."  *Villar*, ¶ 17.  We agree with the

---

[7] To the extent defendants argue their delay in filing an answer was excusable because the firm failed to serve the motion for entry of default at defendants' "last known address," that argument misses the mark for two reasons.  First, the firm did not have to file a motion for entry of default; C.R.C.P. 55(a) plainly directs that the clerk "shall" enter default when a party "has failed to plead or otherwise defend" without being prompted by a motion.  Second, the motion for default did not trigger defendants' answer deadline; the district court's order denying defendants' C.R.C.P. 12(b)(2) motion to dismiss was the trigger.  *See* C.R.C.P. 12(a)(1).

*Villar* division's definition and with its conclusion that the definition "comports with due process." *Id.*

¶ 37    The district court's order denying defendants' C.R.C.P. 12(b)(2) motion to dismiss was served by mail on Lancaster at an address on Quesada Avenue and on Jensen at an address on Kaskanak Drive (residential addresses). The firm listed these residential addresses in the summonses served on defendants when the lawsuit commenced. It is reasonable to infer that the residential addresses were the most recent places at which the firm recognized it could communicate with defendants.[8]

¶ 38    Defendants have never disputed that the residential addresses belonged to them and were addresses at which they could be communicated with, nor did they offer evidence that they did not receive the orders and other documents sent to those addresses.[9]

---

[8] Indeed, the Quesada address was listed on a check the firm sent Lancaster reimbursing her for authorized expenditures incurred in opening the Anchorage office.

[9] To the extent the motion to set aside default asserted that Jensen had "never been served a filing in this case" or "been served or sent any correspondence regarding orders from the [c]ourt," we note that Jensen did not sign the motion, *see* C.R.C.P. 11(a), and defendants provided no evidence to support that broad claim. And despite the statement in the motion that defendants provided affidavits to establish the lack of notice, no such affidavits were filed.

21

The court file does not include any returned mail sent to the residential addresses. In fact, Lancaster admitted receiving the court's order denying the C.R.C.P. 12(b)(2) motion, albeit after some delay. And although Lancaster asserted that she repeatedly asked to be served at her business address, she pointed to nothing in the record — nor can we find anything — where such a request was made before default entered.

¶ 39 That defendants may have preferred service at a different address does not mean service was invalid. Because C.R.C.P. 5(b)(2)(B) authorizes service at the "last known address," we decline to impose additional requirements for such service. *See Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo. 2005) ("We will not create an

addition to a statute that the plain language does not suggest or demand.").[10]

¶ 40     We also reject defendants' reliance on *People v. Buscarello*, in which an attorney sent a motion to dismiss to a different address than the one on the pleadings. 706 P.2d 805, 806 (Colo. App. 1985). *Buscarello* applied the 1985 version of C.R.C.P. 5(b), which required that "[s]ervice upon the attorney or upon a party shall be made by delivering a copy to [them] or by mailing it to [them] at [their] address *as given in the pleadings*." (Emphasis added.) Under

---

[10] We recognize that the district court clearly erred when it found that (1) the firm had served defendants with the motion for entry of default at their business address and (2) the business address had always been the address on file with the court. The firm's certificate of service clearly lists the residential addresses, and nothing in the record shows that the court had defendants' business address on file as the address for service. *See Whiting-Turner Contracting Co. v. Guarantee Co. of N. Am. USA*, 2019 COA 44, ¶ 36 ("A factual finding is clearly erroneous if nothing in the record supports it."). However, any error was harmless because the motion for entry of default was not the event that triggered defendants' deadline to file an answer, *see* C.R.C.P. 12(a)(1)(A), and defendants were served with the court's order denying their motion to dismiss at an appropriate "last known address," C.R.C.P. 5(b)(2)(B). *See Walker v. Ford Motor Co.*, 2017 CO 102, ¶ 21 ("This court will deem an error harmless, and thus will not reverse a judgment, unless the error resulted in substantial prejudice to a party.").

23

the current version of C.R.C.P. 5(b)(2)(B), service by mailing a copy to a party's "last known address" suffices.

¶ 41    Similarly, we reject defendants' reliance on *First National Bank of Telluride v. Fleisher*, in which the Colorado Supreme Court vacated the trial court's default judgment because the court's order triggering the defaulting party's obligation to respond was (apparently undisputedly) mailed to the wrong address and the party received no notice, in violation of due process.  2 P.3d 706, 709, 712-15 (Colo. 2000).  Unlike *Fleisher*, the district court's order was not sent to the "wrong address," and defendants received actual notice, as evidenced by their intermittent participation in the litigation.  *See In re Estate of Ongaro*, 998 P.2d 1097, 1105 (Colo. 2000) (actual notice satisfies due process requirements of notice and an opportunity to participate).[11]

---

[11] To the extent defendants attempt to raise a due process challenge, it is undeveloped, and we decline to address it.  *See S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein*, 2014 COA 171, ¶ 35; *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010).

### b. Mail Delays

¶ 42 Defendants next contend that their delay in filing an answer was excusable because of delays in the mail. Even assuming that mail delays are the reason Lancaster did not receive the district court's order denying defendants' motion to dismiss until February 23, 2024, as she claimed, mail delays do not explain why she waited another thirty-eight days to file a one-line answer.

¶ 43 Recall that the court did not enter default until March 20, almost a month after Lancaster said she received the order. Lancaster signed the answer on March 26, and it was accepted for filing by the court just six days later. Had she signed and mailed the answer for filing shortly after she received the court's order, it is reasonable to presume that the court would have received it long before entering default. Without further explanation, defendants have failed to show that delays in the mail were an "unforeseen circumstance" that would excuse their neglect. *Goodman*, 222 P.3d at 319; *see also Ford v. Henderson*, 691 P.2d 754, 756 (Colo. App. 1984) (affirming a trial court's conclusion that a party's reliance upon the postal service to timely deliver mail does not constitute excusable neglect).

### c.    Deadline to File

¶ 44    Finally, defendants argue that they believed they had thirty-five days after receiving the district court's order to file an answer because the summonses indicated they had thirty-five days "to file [an] answer or other response" if they were served outside of Colorado.  But the deadline in the summonses was the deadline for defendants to file some initial response to the complaint.  Defendants elected to file a motion to dismiss, albeit well beyond the thirty-five-day deadline.  Once the court denied defendants' motion, they had fourteen days to file an answer.  C.R.C.P. 12(a)(1)(A).

¶ 45    Regardless of whether the court's order included the answer deadline, even unrepresented parties are bound by the rules of civil procedure.  *Cornelius v. River Ridge Ranch Landowners Ass'n*, 202 P.3d 564, 572 (Colo. 2009).  And these unrepresented parties were licensed attorneys in Alaska.  Defendants' failure to follow the rules does not excuse their untimely answer.  *See id.*; *Adams v. Sagee*, 2017 COA 133, ¶ 3 n.1 ("[T]he law is clear that mistake or ignorance of the law doesn't constitute excusable neglect." (citing *Goodman*, 222 P.3d at 321-22)).

¶ 46     We conclude that the district court did not err by concluding that defendants did not demonstrate excusable neglect. *See Goodman*, 222 P.3d at 319.

### 2. Meritorious Defense

¶ 47     Defendants next contend that they presented a meritorious defense because their motion to set aside default and associated reply incorporated the factual allegations contained in their motion to dismiss. But the motion and reply belie this contention.

¶ 48     The motion does not incorporate the motion to dismiss or any of its content. In the section of the motion discussing a meritorious defense, it merely states "[t]he [d]efendant's [sic] affidavits are taken as testimony as to the facts of the case as they know them," but defendants did not submit any affidavits with their motion. And although a party may not raise new arguments for the first time in a reply, the reply to the motion to set aside default also fails to incorporate the motion to dismiss. All it says is that "[a] threshold issue the court will need to address in a separate pleading is whether there is a source for remedy, such as a contract (which to date has not been presented by [the firm])." Merely flagging for the court that it must determine whether a contract exists to resolve a

breach of contract claim does not reflect any theory of defense. Defendants failed entirely to alleged a meritorious defense. *See id.*

### 3. Equitable Considerations

¶ 49    Lastly, defendants argue that equitable considerations should have resulted in the district court setting aside the entry of default. Defendants point out that they promptly filed the motion to set aside default, and the firm suffered no prejudice beyond having to prove its case. We are not persuaded.

¶ 50    The court found that Lancaster's "relative promptness" in filing the motion to set aside default "would weigh heavily in her favor and could, by itself, be decisive," "under most circumstances." But two facts "weighed against that" here: (1) Lancaster is an attorney who should understand the applicable rules and deadlines, and (2) she "casually and contemptuously ignored all deadlines and rules and failed even to begin to engage with the merits of the case." True, the court did not analyze the prejudice, or lack thereof, to the firm. But because failure to satisfy even one factor may justify denying a request to set aside the entry of default, and because defendants wholly failed to show excusable neglect or allege a

28

meritorious defense, we perceive no error in how the court weighed the equities. *See id.* at 320.

¶ 51 We conclude that the district court did not abuse its discretion by determining that defendants failed to demonstrate good cause to set aside the entry of default. *See Ferraro*, ¶ 10.

## D. Sanction

¶ 52 Defendants also contend that the district court erroneously entered default against them as a sanction. We reject this argument. It is apparent from the court's order denying defendants' motion to set aside default that it did not enter default as a sanction but because defendants failed to timely file an answer. And it refused to set aside the default because defendants failed to demonstrate good cause.

## E. Relief as to Jensen

¶ 53 Defendants contend that the district court erred by considering the motion to set aside default as not having been filed by Jensen because he did not sign it. As an unrepresented party, Jensen was required to sign any pleading he filed with the court. C.R.C.P. 11(a). He did not sign the answer or the motion to set aside default purportedly filed on his behalf. Thus, we perceive no

29

error in the court's analysis. But even assuming the court should have considered the reply Jensen signed as his affirmative motion to set aside default, any error was necessarily harmless because we have concluded that the court did not abuse its discretion by denying the motion (and reply) on the merits. *See Walker v. Ford Motor Co.*, 2017 CO 102, ¶ 21.

### F. Servicemembers Civil Relief Act

¶ 54 Lancaster contends that the district court erred by "disregarding" her argument that § 3931 of the SCRA applied and by failing to investigate her military status further when she claimed to be protected by the SCRA. But the court did not disregard her argument; it concluded that the SCRA did not apply. We affirm that conclusion, albeit on different grounds. *See Laleh v. Johnson*, 2017 CO 93, ¶ 24 (an appellate court can affirm a trial court's order on any ground supported by the record, whether relied upon or even considered by the trial court).

¶ 55 First, § 3931 of the SCRA, titled "Protection of servicemembers against default judgments," applies in any civil case *when a defendant has failed to make an appearance.* 50 U.S.C. § 3931(a). Lancaster did not fail to appear — she filed a motion to dismiss.

*See Rouse v. Moore*, 724 F. Supp. 3d 410, 421 (D. Md. 2024) (explaining that § 3931 obligates courts to ensure servicemembers are protected when they have not appeared); *Martin v. Indianapolis Morris Plan Corp.,* 400 N.E.2d 1173, 1176 (Ind. Ct. App. 1980) (when defendant appeared by filing a motion for preferred venue, the SCRA's requirement for an affidavit showing the defendant was not in the military service did not apply).

¶ 56    Second, the affidavit requirement Lancaster contends was not satisfied applies to protect military personnel against default *judgment,* not entry of default.  *See Interinsurance Exch. v. Collins*, 37 Cal. Rptr. 2d 126, 127 (Ct. App. 1994) ("Congress sought to protect military personnel not from defaults, but from default judgments.").  Indeed, the plain language of the statute confirms as much when it provides that, "before entering *judgment* for the plaintiff," the court shall require the plaintiff to file an affidavit stating (1) whether or not the defendant is in the military and showing the necessary facts to support the affidavit or (2) that the plaintiff cannot determine whether the defendant is in military service.  50 U.S.C. § 3931(b)(1) (emphasis added).  The firm's

alleged failure to file an SCRA-compliant affidavit provides no grounds for setting aside the entry of default.

¶ 57     Even so, the firm complied with the affidavit requirement when moving for default *judgment.* It submitted a declaration from Kuhn stating that Jensen was not in the military and that Lancaster had not actively served in the military in the last 367 days. The declaration attached a report from the Department of Defense reflecting Lancaster's status. The affidavit requirement is "satisfied by a statement, declaration, verification, or certificate, in writing, subscribed and certified or declared to be true under penalty of perjury." 50 U.S.C. § 3931(b)(4); *see Mulligan Funding LLC v. Tommy Interior Contracting Corp.*, 765 F. Supp. 3d 201, 214 (E.D.N.Y. 2025) (plaintiff complied with the SCRA by filing a report indicating the defendant was not on active duty at the time of default); *cf. Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d. 1235, 1245-47 (W.D. Wash. 2006) (concluding that debt collectors violated the SCRA by failing to file the requisite affidavit when the debtor was on active military duty). The district court correctly concluded that the SCRA provides Lancaster no relief from the entry of default.

IV.    Motion to Testify Remotely

¶ 58    Defendants next contend that the district court erred by denying their motion to testify remotely at the damages hearing based on a "strict application" of the Colorado Rules of Civil Procedure.[12]  We are not persuaded.

¶ 59    Under C.R.C.P. 43(i)(1), a party may request permission to present testimony remotely.  Such a request must be made by written motion "as soon as practicable after the need for absentee testimony becomes known," and it must include, as relevant here, "[t]he reason(s) for allowing such testimony" and "[a] detailed description of all testimony which is proposed to be taken." C.R.C.P. 43(i)(1)(A)-(B).  The court shall determine whether remote testimony may be allowed "in the interest of justice" after considering several nonexhaustive factors, including whether there is a statutory right to absentee testimony.  We review a trial court's decision whether to allow remote testimony for an abuse of discretion.  *People in Interest of M.W.*, 2022 COA 72, ¶ 12.

---

[12] To the extent defendants argue that the district court erred by denying their motion to continue the hearing and to disqualify the judge, they do not develop those arguments, so we decline to address them.  *See Weinstein*, ¶ 35; *Barnett*, 252 P.3d at 19.

¶ 60    The district court denied defendants' motion to testify remotely "for failure to comply with the requirements of C.R.C.P. 43(i)," including the requirements to file as soon as practicable and to provide a detailed description of the proposed testimony. Defendants make no attempt to justify their noncompliance with the rule's filing requirements. Instead, although they acknowledge that the court generally has discretion to permit or deny remote testimony under C.R.C.P. 43, they argue that the court's discretion was displaced by C.R.C.P. 55, which they say requires the court to conduct a hearing at which the defaulting party may "cross-examine witnesses and present mitigating evidence."[13]

¶ 61    It is true that a court's discretion to determine whether the interests of justice require the acceptance of absentee testimony under C.R.C.P. 43(i) may be displaced by a *statutory* mandate to allow such testimony. *See, e.g.*, *People in Interest of S.C.*, 2020 COA

---

[13] Notably, the district court did not deny defendants the ability to *participate* remotely, it simply denied them the opportunity to *testify* remotely. Lancaster participated remotely, including by cross-examining the firm's witness, presenting exhibits, and making a closing argument. Jensen was present remotely for a portion of the hearing but did not participate, so the court did not allow him to make a closing argument.

95, ¶¶ 17-18 (trial court's discretion under C.R.C.P. 43 was displaced by section 14-5-316(a), (f), C.R.S. 2025, which requires a court to permit a party residing out of state to testify remotely in a proceeding under the Uniform Interstate Family Support Act). But C.R.C.P. 55 is not a statute, and it does not require a court to permit remote testimony; it provides only that "[i]f the party against whom judgment by default is sought has appeared in the action, the party . . . shall be served with written notice of the application for judgment at least [seven] days prior to the hearing on such application." C.R.C.P. 55(b)(1). The court gave defendants notice and an opportunity to meaningfully participate in the hearing. *Cf. Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 679 (Colo. 1987) (when the trial court refused to allow defendants the opportunity to object, present evidence, or cross-examine witnesses, it denied defendants an opportunity to meaningfully participate).

¶ 62 Thus, we reject defendants' claim that C.R.C.P. 55 deprived the court of discretion to deny their request for remote testimony. And because defendants fail to address the reason the court denied their request — failure to comply with C.R.C.P. 43(i) — we necessarily affirm the court's order. *See IBC Denver II, LLC v. City*

*of Wheat Ridge*, 183 P.3d 714, 717-18 (Colo. App. 2008) (an appellant's failure to challenge all bases for the lower court's decision requires affirmance).

## V.     Damages

¶ 63     Finally, defendants contend that the district court erred by awarding the firm "all claimed damages," including treble damages, because (1) the evidence did not support the claimed damages; and (2) the firm's complaint failed to set forth a sufficient basis for its claims of civil theft, COCCA violation, or civil conspiracy.  We are not persuaded.

### A.     Standard of Review and Generally Applicable Law

¶ 64     We review a trial court's assessment of damages for clear error.  *Blakeland Drive Invs., LLP IV v. Taghavi*, 2023 COA 30M, ¶ 38.  The trial court has broad discretion to determine the amount of damages to award.  *McDonald's Corp. v. Brentwood Ctr., Ltd.*, 942 P.2d 1308, 1311 (Colo. App. 1997).  We will not disturb an award of damages unless it is completely without record support.  *Hauser v. Rose Health Care Sys.*, 857 P.2d 524, 531 (Colo. App. 1993).

¶ 65     An entry of default establishes liability, but it does not establish damages.  *Dickinson v. Lincoln Bldg. Corp.*, 2015 COA

170M, ¶¶ 22-23. If information is needed to determine damages beyond the complaint's allegations — which are deemed admitted — the court should hold a hearing. C.R.C.P. 55(b)(1); *Kwik Way Stores*, 745 P.2d at 679. But "[a] damages hearing is only held to determine the amount of damages owed, and any discussion of the liability underlying that award is prohibited." *Dickinson*, ¶ 28.

### B.    Additional Background

¶ 66    The firm requested $126,570.49 in damages as follows:

> a. KeyBank Theft: $10,628.36
>
> b. Office Pre-Paid Rent/Deposit: $25,478.70
>
> c. Possession/Retention of Artwork: $2,400
>
> d. Possession/Retention of Copy Machine: $22,283.12
>
> e. Possession/Retention of Equipment/ Appliances/Supplies/Insurance: $22,858.43
>
> f. (Estimated) Diverted Municipality of Anchorage Revenue: $18,360
>
> g. (Estimated) Diverted Receivables: $24,561.88.

The firm also requested treble damages based on its civil theft and COCCA claims and prejudgment interest.

¶ 67　　At the damages hearing, Kuhn testified, and the court admitted email exchanges between Kuhn and defendants regarding the $10,000 cash withdrawal from the KeyBank account. In the emails, defendants did not deny taking the money; they argued they were entitled to it. The firm also admitted the KeyBank withdrawal receipt for the $10,000, the office lease agreement and a copy of a check reflecting payment of the security deposit, a KeyBank withdrawal receipt for money Lancaster used to buy art for the office, and receipts for unauthorized personal purchases by Lancaster on the firm's credit card. The firm also admitted an itemized breakdown of the requested damages.

¶ 68　　Lancaster arrived at the hearing late but cross-examined Kuhn regarding the claimed damages and the admitted exhibits. During closing, Lancaster argued that Kuhn "couldn't answer . . . what was done by [the firm] to open a firm in Alaska and then claim all these damages." She continued, "[O]utside of the [c]omplaint, [Kuhn] basically repeated that he doesn't have clear documents. He doesn't have clear invoicing. He doesn't know what happened. He doesn't know what's spent. He doesn't know who signed things. He

doesn't know what checks went out." Lancaster also argued that treble damages are "punitive" and should be determined by a jury.

¶ 69     The district court first ruled that the allegations in the complaint were deemed admitted because default had entered against the defendants. The court then determined that the firm's complaint, Kuhn's testimony, and the exhibits established that defendants "knowingly and intentionally took control over monies and things of value of the firm without authorization and then retained control over those and refused to return or reimburse despite requests to do so." The court concluded that the firm's requested damages were supported by the evidence. And the court awarded treble damages based on the civil theft and COCCA claims.

C.    The Record Supports the Damages Award

¶ 70     Although defendants contend that the district court erred by granting the firm all claimed damages "despite evidence within the record that [the firm] was not damaged as claimed," they point us to no such evidence. It is the defendants' burden to direct us to the relevant evidence in the record. *See Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 335 (Colo. App. 1996) ("[I]t is not the duty of the reviewing court to search the record for

evidence to support bald assertions."), *aff'd*, 940 P.2d 348 (Colo. 1997). And even if the evidence was conflicting, we will not reweigh it. *Lawry v. Palm*, 192 P.3d 550, 558 (Colo. App. 2008) ("When the evidence is conflicting, a reviewing court may not substitute its conclusions for those of the trial court merely because there may be credible evidence supporting a different result."). Because the record supports the court's damages award, we will not disturb it. *See Blakeland Drive Invs.*, ¶ 38; *Hauser*, 857 P.2d at 531.

¶ 71    As to the argument that the allegations in the firm's complaint were not well pleaded and thus were insufficient to establish defendants' liability on the civil theft, COCCA, and civil conspiracy claims, *see Ferraro*, ¶¶ 16-17 (a defendant does not admit facts that are not well pleaded or admit conclusions of law because baseless claims should not proceed to final judgment), we conclude that defendants failed to preserve this contention. The only argument Lancaster made at the hearing with regard to treble damages was that an award of such damages was punitive and should be determined by a jury. Defendants' argument on appeal is different, so we decline to address it. *See Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 ("In civil cases, arguments never presented to,

considered by, or ruled upon by a district court may not be raised for the first time on appeal.").

## VI.    The Firm's Request for Appellate Attorney Fees

¶ 72    The firm requests an award of appellate attorney fees on the basis that the district court awarded it fees for prevailing on the civil theft and COCCA claims.  Because the firm failed to cite any authority entitling it to the requested fees, we decline to award them.  *See* C.A.R. 39.1 ("If attorney fees are recoverable for the appeal, the principal brief of the party claiming attorney fees must include a specific request, under a separate heading, and must explain the legal and factual basis for an award of attorney fees.").

## VII.   Disposition

¶ 73    We affirm the judgment.

JUDGE FOX and JUDGE MEIRINK concur.